KRAVITCH, Circuit Judge:
 

 Petitioner USX Corporation (USX) petitions for review of a final decision and order of Respondent Department of Labor, Benefits Review Board (BRB) affirming the order of an Administrative Law Judge transferring liability for Black Lung Benefits from the Black Lung Disability Trust Fund (Trust Fund) to USX. We reverse the order.
 

 1.
 
 Facts and Procedural History
 

 On June 28, 1973, Pervy Bridges filed with the Social Security Administration a claim for benefits under Part B of the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901-45. That claim was denied on November 13, 1973. Bridges did not appeal this denial. Instead, on December 2, 1974, he filed a second claim, this time for benefits under Part C of the Act, with
 
 *657
 
 the Department of Labor (DOL).
 
 [1]
 
 On April 14, 1976, an administrative law judge awarded the claimant benefits from his employer, coal mine operator USX, on this second claim. The BRB affirmed the award, as did the Fifth Circuit.
 
 United States Steel Corp. v. Bridges,
 
 582 F.2d 7 (1978).
 

 Following this decision, USX reimbursed DOL for interim benefits made to Bridges from the Trust Fund, and thereafter made monthly payments directly to Bridges until 1982. While the appeal to the Fifth Circuit was pending, Bridges also had sought review of the denial of his Part B claim. Because the Fifth Circuit affirmed the award of benefits on Bridges’ Part C claim, however, DOL never acted on his request for review of the denial of Part B benefits.
 

 In 1978, Congress broadened the award criteria for miners who claimed injuries resulting from black lung disease. DOL thereafter reopened closed files and reviewed denied claims for possible awards under the new criteria. Many claimants who had once been denied benefits were then found to be eligible for awards. The change in standards, however, led to unexpected liability for many mine operators. In response, Congress passed the Black Lung Benefits Revenue Act in 1981, which provided for a transfer of liability for certain black lung benefits claims from the mine operators to the Black Lung Trust Fund. The Amendment affected only claims that originally were denied prior to March 1, 1978, but had later been reopened and awarded benefits under the new criteria.
 

 USX requested that DOL review Bridges’ Part C claim for possible transfer of payment liability to the Trust Fund. The Deputy Commissioner of the DOL determined on February 10, 1982, that the Part C claim was eligible for transfer under the Amendments. DOL informed USX on April 21, 1982, that the Trust Fund would assume responsibility for monthly benefit payments to Bridges as of June, 1982. USX made its last payment to Bridges in May, 1982. The Department issued an amended award of benefits on July 8, 1982, officially relieving USX of responsibility for the claim. By its terms, the amended award became final thirty days after filing in the office of the Deputy Commissioner.
 

 In 1986, during a routine check of all black lung claims being paid by the Trust Fund, a Deputy Commissioner of the Office of Workers’ Compensation Programs (OWCP) determined that liability for Bridges’ Part C claim had been transferred erroneously from USX to the Trust Fund. In particular, the Deputy Commissioner noted that the Black Lung Benefits Amendments of 1981 permitted transfer of liability only for claims that had been denied prior to March 1, 1978, and then awarded under section 435 of the Black Lung Benefits Act. Bridges’ Part C claim, however, had never been denied.
 

 DOL has the authority to modify benefits “on the ground of a change in conditions or because of a mistake in a determination of fact” within one year of the last payment of compensation. 20 C.F.R. § 725.310(a). The Deputy Commissioner issued to USX an Order to Show Cause as to why the amended order should not be set aside and liability transferred back to USX. USX timely responded, but on August 8, 1986, the Deputy Commissioner found that
 
 *658
 
 the transfer had been based on a mistake of fact and ordered transfer of liability to USX.
 

 USX appealed the order. On August 25, 1986, an Administrative Law Judge (ALJ) affirmed the transfer of liability for Bridges’ Part C Claim from the Trust Fund to USX. USX then appealed to the Benefits Review Board, which affirmed the ALJ’s order.
 

 We have jurisdiction of USX’s appeal from the final decision and order of the BRB pursuant to section 21(c) of the Long-shore and Harbor Workers’ Compensation Act, 33 U.S.C. § 921(c), as incorporated by section 422(a) of the Black Lung Benefits Act, 30 U.S.C. § 932(a).
 

 II.
 
 Analysis
 

 USX raises four arguments: (1) the Deputy Commissioner’s modification fell outside the applicable limitations period; (2) the Deputy Commissioner waived the right to seek modification of the 1982 determination; (3) the Deputy Commissioner’s 1982 determination that Bridges’ Part C claim was subject to transfer was not premised on a mistake of fact, but rather on a misapplication of the relevant statute and thus did not fall within the modification provision; and (4) the 1982 transfer of liability was correct and should not have been modified. We reverse BRB’s order as outside of the statute of limitations. We therefore need not reach the merits of the 1982 transfer order.
 

 Claims involving the Black Lung Benefits Act are processed by the OWCP. A Deputy Commissioner develops relevant evidence, makes findings of fact, and issues a proposed decision and order. 20 C.F.R. § 725.418. The decision of the Deputy Commissioner becomes final if there is no objection within thirty days. However, section 22 of the Longshore and Harbor Workers’ Compensation Act (LHWCA), 33 U.S.C. § 922, incorporated into the Black Lung Benefits Act at 30 U.S.C. § 932(a), authorizes a Deputy Commissioner to review a case and issue a new compensation order within one year of the last payment of benefits or at any time prior to one year after the rejection of a claim on the ground of a change in conditions or a mistake in a determination of fact by the Deputy Commissioner. DOL subsequently implemented this power by issuing, regulations providing for modification proceedings.
 
 See
 
 20 C.F.R. § 725.310 (1992).
 
 [2]
 

 DOL argues that it acted within the statute of limitations because the Trust Fund was still paying benefits to Bridges on August 8, 1986. USX, on the other hand, contends that DOL was required to modify the transfer of liability, if at all, within one year of the date USX stopped making payments to Bridges, which was in 1982.
 

 Neither section 22 nor the regulation states whether the statute of limitations runs from the date of the last payment of benefits by the mine operator, here USX, or the Trust Fund. The ALJ did not address the statute of limitations issue in his Order. Neither did the BRB in its affir-mance. The Director cites no statute, regulation or case in support of its interpretation which would require our deference. We have only the Director’s litigating position, which, this court has ruled, is not entitled to deference.
 
 William Bros., Inc. v. Pate,
 
 833 F.2d 261, 264-65 (11th Cir. 1987).
 

 The power to modify final judgments under section 22 is an exception to the principles of finality and
 
 res judicata
 
 that normally prevent relitigation of a case. A Deputy Commissioner may reverse a ruling “to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted.”
 
 O’Keefe v. Aerojet-General Shipyards Inc.,
 
 404 U.S. 254, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971). This broad power to reopen cases, however, is subject to a time limit of
 
 *659
 
 one year from the last payment of benefits or the rejection of a claim.
 

 This provision demonstrates Congress’s concern that there be some point at which the settlement of a claim becomes final and a litigant is assured of the outcome. In particular, the provision protects defendants such as USX from unanticipated liability more than one year after it has been found not to be responsible for a claim. If we accept the Director’s interpretation of the time limit, USX can be subject to relitigation of this claim for possibly another twenty years, so long as Bridges is living and receiving benefits. This interpretation renders the statute of limitations meaningless. Statutes of limitation “represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that ‘the right to be free of stale claims in time comes to prevail over the right to prosecute them.’ ”
 
 United States v. Kubrick,
 
 444 U.S. 111, 117, 100 S.Ct. 352, 356-57, 62 L.Ed.2d 259 (1979) (citation omitted). Thus, in order to give logical effect to Congress’s action, we conclude that the statute of limitations for this type of a modification runs from the date of the last payment of benefits by the mine operator.
 
 [3]
 
 Congress has given the Director the ability to reopen closed cases, but, in our view, to do so more than four years after relieving USX of liability is unreasonable and an abuse of this power.
 

 III.
 
 Conclusion
 

 Section 22 of the Longshore and Harbor Workers’ Compensation Act and 20 C.F.R. § 725.310(a) allows ' the Deputy Commissioner of the Office of Workers’ Compensation Program to modify a compensation order because of a mistake in determination of fact within one year of the termination of benefits. Because the Deputy Commissioner modified the transfer of liability more than four years after USX was relieved of liability for Bridges’ claim, the Deputy Commissioner did not act within the statute of limitations. The Order of the Benefits Review Board is therefore
 

 REVERSED.
 

 [1]
 

 . As originally enacted, Title IV of the Federal Coal Mine Health and Safety Act of 1969 established two programs — Part B and Part C — under which coal miners totally disabled by work-related pneumoconiosis (black lung disease) could receive benefits. Part B was a federally-funded program, administered by the Former Department of Health, Education and Welfare, that governed all claims for benefits filed before January 1, 1973. Part C was a joint federal and state program governing claims filed between January 1, 1973 and December 1, 1976. Part C claims were to be filed pursuant to state workers’ compensation laws except if those laws did not provide adequate coverage as determined by the Secretary of Labor, in which case the miner could then file for benefits under a program administered by the Department of Labor. Under this program, coal mine operators were expected to pay benefits unless a responsible operator could not be identified, in which case the Secretary of Labor would pay them from federal funds appropriated for that purpose.
 
 See Old Ben Coal Co. v. Luker,
 
 826 F.2d 688, 693-95 (7th Cir.1987) (describing the legislative history of the Black Lung Benefits Act).
 

 [2]
 

 . 20 C.F.R. § 725.310 provides as follows: "(a) Upon his or her own initiative, or upon request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.”
 

 [3]
 

 . Although not mentioned by the parties, we are aware that the Supreme. Court has addressed the modification of awards provision of the Long-shore and Harbor Workers’ Compensation Act, and that parts of the LHWCA were incorporated into the Black Lung Benefits Act.
 
 Intercounty Construction Corporation v. Walter,
 
 422 U.S. 1, 95 S.Ct. 2016, 44 L.Ed.2d 643 (1975). The focus of
 
 Intercounty
 
 was different than the case at bar, yet
 
 Intercounty’s
 
 discussion of the legislative history of § 22 is related to the instant case. Section 22 originally allowed for the modification of awards only “during the term of an award.”
 
 Intercounty,
 
 422 U.S. at 8, 95 S.Ct. at 2021. In 1934, Congress amended § 22 to allow modification "at any time prior to one year after the date of the last payment of compensation.”
 
 Id.
 
 The Supreme Court stated that there is no "indication that [the] amendment of this provision was sought for any purpose other than broadening the length of time during which the deputy commissioner could exercise his power to modify previously entered orders.”
 
 Id.
 
 At first blush this would seem to support DOL’s argument. We believe, however, that Congress’s intention in the creation of the Black Lung Trust Fund and its provisions could not have been identical to its motivations in amending § 22 of the LHWCA. In the Black Lung context, as opposed to the LHWCA context, the government • may shift the monetary burden from a mine operator to the Black Lung Trust Fund. When Congress passed the LHWCA, it did not anticipate all of the complexities of the current system of Black Lung awards. Thus, although the language is statutorily incorporated from the LHWCA, the' interpretation of that LHWCA language in the case at bar must be consistent with the goals of the Black Lung laws.
 

 After a year has passed from the mine operator’s last payment to an awardee, pursuant to a governmental decision to transfer a claim to the Black Lung Trust Fund, the mine operator should be able to rely upon that decision. To hold otherwise would offend fundamental concepts of finality and
 
 res judicata.