RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ARKANSAS COALS, INC. and OLD REPUBLIC
INSURANCE CO.,

                                  *Petitioners,*

      *v.*

ALBERT LAWSON and DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

                                  *Respondents.*

No. 13-3563

Upon Petition for Review of a Decision
and Order of the Benefits Review Board.
No. 11-0703 BLA.

Argued: December 6, 2013

Decided and Filed: January 9, 2014

Before: McKEAGUE and STRANCH, Circuit Judges; COLLIER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mark E. Solomons, GREENBERG TRAURIG, LLP. Washington, D.C., for Petitioners. Jonathan P. Rolfe, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. **ON BRIEF:** Mark E. Solomons, Laura Metcoff Klaus, GREENBERG TRAURIG, LLP. Washington, D.C., for Petitioners. Jonathan P. Rolfe, Gary K. Stearman, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

_____

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

_____

**OPINION**

_____

McKEAGUE, Circuit Judge.  This case involves a dispute over who should pay benefits under the Black Lung Benefits Act to a coal miner afflicted with pneumoconiosis.  The claimant originally brought suit in 1992 and an administrative law judge determined that he was not medically qualified for benefits.  In the same decision, the administrative law judge indicated that Arkansas Coals was not the "responsible operator" required to pay benefits.  Approximately seventeen years later, the claimant filed a second claim alleging a change in his medical condition and requesting relief.  After finding that his medical condition had worsened and that the claimant was now disabled, an administrative law judge awarded benefits and determined that Arkansas Coals was the responsible operator.  The Benefits Review Board upheld this decision.

Arkansas Coals appeals the determination that it is the responsible operator.  The company presents four arguments: 1) that the principle of finality and the Longshore Act bar reconsideration of the responsible operator designation after a determination has been made that a company is not the responsible operator; 2) that collateral estoppel precludes the Department of Labor from now asserting that Arkansas Coals is the responsible operator; 3) that the director waived the right to relitigate Arkansas Coals's liability; and 4) that even if the court reconsiders the question of the responsible operator, the uncontradicted evidence establishes that another company should be held liable.  As the claimant was entitled to bring a second claim under 20 C.F.R. § 725.309(d)(4)[1] and as the determination that Arkansas Coals was the responsible operator was not "necessary" to the resolution of the initial claim, we reject the finality and collateral estoppel arguments.  Likewise, as the director contested Arkansas Coals's

_____

[1]The cited federal regulations refer to those in place at the time of this litigation.  Some minor technical changes have subsequently been made to the regulations' numbering and text but are irrelevant for the purposes of this case. *See* 78 Fed. Reg. 59102, 59118 (Sep. 25, 2013).

denial of its responsible operator status during the initial claim, we also reject the waiver argument. Finally, substantial evidence supports the administrative law judge's determination that Arkansas Coals is the responsible operator, and therefore, relief on the grounds that another company is the responsible operator is also denied. As the Benefits Review Board properly determined that Arkansas Coals was the responsible operator, we **AFFIRM** the Benefits Review Board's decision.

## I.

### A. The Structure of the Black Lung Benefits Act

Congress passed the Black Lung Benefits Act ("the Act") and created the Black Lung Disability Trust Fund to provide benefits for miners and their survivors when a miner is killed or disabled by pneumoconiosis. 30 U.S.C. § 901. Pneumoconiosis, popularly known as black lung, is a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments" that develops from inhalation of coal dust. 30 U.S.C. § 902(b). A miner is entitled to benefits if the disability arose "at least in part, out of employment in a mine during a period after December 31, 1969." 30 U.S.C. § 932(c). To ensure that the fund does not bear the sole burden of black lung claims, the Department of Labor ("the Department"), following congressional authorization, established regulations to ensure that coal mine operators are liable "to the maximum extent feasible" for awarded claims. *Director, OWCP v. Oglebay Norton Co.*, 877 F.2d 1300, 1304 (6th Cir. 1989) (internal quotation marks and citations omitted).

An operator is liable for benefits only if several conditions are met. First, the miner seeking benefits must have been "employed by the operator, or . . . a successor operator, for a cumulative period of not less than one year," and second, the "operator [must be] capable of assuming its liability for the payment of continuing benefits under this part." 20 C.F.R. § 725.494(c), (e). An operator is capable of assuming liability if it satisfies one of the following three conditions: "(1) the operator obtained a policy or contract of insurance . . . ; (2) [t]he operator qualified as a self-insurer . . . during the period in which the miner was last employed by the operator . . . ; or (3) [t]he operator

possesses sufficient assets to secure the payment of benefits in the event the claim is awarded in accordance with § 725.606." § 725.494(e)(1)–(3). The operator that "most recently employed the miner" for more than one year and that satisfies one of the § 725.494(e) criteria is held liable. If that operator fails to satisfy one of the § 725.494(e) criteria, then the operator that next most recently employed the miner and that satisfies one of the § 725.494(e) criteria is held liable. § 725.495(a)(3). The Black Lung Disability fund provides benefits if "there is no operator who is liable for the payment of such benefits." 26 U.S.C. § 9501(d)(1)(B).

A director is responsible for identifying those operators that are potentially liable and for issuing an initial order designating the responsible operator. 20 C.F.R. §§ 725.401, 725.418(d). The responsible operator may then request a de novo hearing before an administrative law judge ("ALJ"). §§ 725.419(a), 725.455(a). The director bears the burden of proof that the responsible operator is potentially liable, and if the responsible operator is *not* the employer that most recently employed the miner, then the director must explain the reason for the designation. § 725.495 (b), (d).

One common reason why a director might select a prior employer as the responsible operator is if the most recent employer lacked insurance. *See* § 725.494(e)(1)-(3). Under such circumstances, the director must provide "a statement that the Office has searched the files it maintains . . . , and that the Office has no record of insurance coverage for [the most recent] employer, or of authorization to self-insure." § 725.495(d). "Such a statement shall be prima facie evidence that the most recent employer is not financially capable of assuming its liability for a claim." *Id.* And as discussed above, if the most recent employer is incapable of assuming its liability for the payment of benefits, then the operator that most recently employed the miner *and* that satisfies one of the § 725.494 criteria is held liable. In the absence of a statement regarding insurance coverage, it is presumed that the most recent employer is financially capable of assuming its liability for a claim. However, if the director satisfies the prima facie requirement by searching the office files, the burden shifts to the designated

responsible operator to "demonstrate that the more recent employer possesses sufficient assets to secure the payment of benefits in accordance with § 725.606." § 725.495(c).

Because pneumoconiosis can lie dormant and then later appear, miners are allowed to file subsequent claims even after having a previous claim denied.[2] Subsequent claims—additional claims for benefits filed "more than one year after the effective date of a final order denying a claim previously filed"—are permitted if the claimant "demonstrates that one of the applicable conditions of entitlement . . . *has changed* since the date upon which the order denying the prior claim became final." § 725.309(d) (emphasis added). "[T]he applicable conditions of entitlement shall be limited to those conditions upon which the prior denial was based." § 725.309(d)(2). *See generally Cumberland River*, 690 F.3d at 477 (describing the claims process under the Act).

When assessing a subsequent claim, all evidence, both new and old, is considered. Moreover, "no findings made in connection with the prior claim, except those based on a party's failure to contest an issue (see § 725.463), shall be binding on any party in the adjudication of the subsequent claim." 20 C.F.R. § 725.309(d)(4). The one exception is for stipulations by either party, which are treated as binding. *Id.*

**B.     Procedural History of Lawson's Claim**

Albert Lawson began working as a coal miner in 1964 and retired from the industry in 1989. His employment with Arkansas Coals ran from 1980 to 1982, and he was subsequently employed by various coal companies from 1982 to 1989. After his employment with Arkansas Coals, only the Martin T. Mining & Exploration Company ("Martin Mining") employed him for longer than one full year.

---

[2]Arkansas Coals contends that subsequent claims are a "creation of DOL and the courts" and unconnected to statutory authority. As this court has approved the filing of such claims on prior occasions, this criticism need not be addressed. *See, e.g.*, *Cumberland River Coal Co. v. Banks*, 690 F.3d 477 (6th Cir. 2012) (affirming the award of benefits to a miner who had brought previously two unsuccessful claims).

Lawson filed his first Black Lung Benefits Act claim on May 23, 1990.  The director named Arkansas Coals as the responsible operator, and Arkansas Coals filed a motion to dismiss noting that Martin Mining employed Lawson for more than one year after he had worked for Arkansas Coals.  In response, the director informed the ALJ that Martin Mining had been insured only up until July 29, 1987, and was not insured on the date of Lawson's last exposure.  Finding there to be a "substantial dispute as to issues of fact," the ALJ denied the motion to dismiss Arkansas Coals as the responsible operator, noting that "the Director should be allowed to introduce this evidence at the hearing." Order on the Mot. to Dismiss the Employer.

Following a formal hearing, and after reviewing the opinion of eight different doctors, the ALJ issued a decision in 1992 denying Lawson's request for benefits after determining that the "existence of pneumoconiosis has not been established." Decision and Order Denying Benefits.  While the ALJ's ultimate decision and order turned on the medical issues in dispute, the court did discuss in dicta the "Responsible Operator Issue." *Id.*  The ALJ specifically indicated that the "Director failed to send a representative to the hearing" and "failed to submit any evidence on the Responsible Operator issue." *Id*.  As Arkansas Coals presented evidence that Martin Mining had subsequently employed Lawson, the ALJ found, "the evidence in the record supports the Employer's contention that the Claimant's most recent period of cumulative employment of not less than one year was not with the named Responsible Operator." *Id.* Accordingly, the ALJ determined that Arkansas Coals was not the responsible operator and that the Trust Fund would be held liable "should this claim be awarded." *Id.*

On February 25, 2009, Lawson filed a subsequent claim, giving rise to this action.  After reviewing his new claim, the director approved benefits and named Arkansas Coals as the responsible operator.  Arkansas Coals appealed, arguing that its designation as the responsible operator was blocked by principles of finality and collateral estoppel.  The ALJ disagreed, holding that neither issue nor claim preclusion applied because the ALJ's determination regarding the responsible operator in Lawson's first claim was not "necessary to the outcome of the case."  Decision and Order

Awarding Benefits.  As such, the director had "no incentive to challenge the responsible operator finding on appeal." *Id.*

The ALJ further determined that substantial evidence supported the conclusion that Arkansas Coals had been properly designated as the responsible operator.  The director presented evidence that he had searched the relevant records and discovered that Martin Mining neither had an insurance policy, nor was an approved self-insurer, when Lawson worked for the company.  This statement constituted prima facie evidence that Martin Mining was not financially capable of assuming its liability for the benefits.  As the employer that had next employed Lawson for more than one year and that was insured, Arkansas Coals thus became the responsible operator.

Arkansas Coals attempted to rebut the presumption that it was the responsible operator.  Arkansas Coals presented testimony from Mr. Gearheart, a former co-owner of Martin Mining, which suggested that Martin Mining was a contractor for a third company, RMJ.  If Martin Mining was in fact a contractor, RMJ might be an alternate source of insurance coverage.  The ALJ ultimately rejected this interpretation after characterizing Gearheart's deposition as oblique, "marred by faulty memory," and "fall[ing] far short of carrying the Employer's burden."  *Id*.

Arkansas Coals appealed the ALJ's determination to the Benefits Review Board. In a per curiam decision and order issued July 31, 2012, the Benefits Review Board affirmed the ALJ's determination and reasoning.  The Board subsequently denied Arkansas Coals Motion for Rehearing on March 7, 2013. This appeal followed.

## II.

This court reviews legal conclusions de novo. *See Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 477 (6th Cir. 2011).  Deference should be granted, however, to the Department of Labor's interpretation of the Act.  *See Anderson Bros. Ford. v. Valencia*, 452, U.S. 205, 219 (1981) ("[A]bsent some obvious repugnance to the statute, the Board's regulation implementing this legislation should be accepted by the courts, as should the Board's interpretation of its own regulation.").  "A court should defer to

an agency's interpretation of its own regulation, advanced in a legal brief, unless that interpretation is plainly erroneous or inconsistent with the regulation." *Cumberland River*, 690 F.3d at 485 (internal citation and quotation marks omitted). "[A] failure by the ALJ to apply the correct legal standard presents a legal question over which the Review Board and this Court have plenary review." *Conley v. Nat'l Mines Corp.*, 595 F.3d 297, 301 (6th Cir. 2010).

Arkansas Coals challenges on appeal its designation as the responsible operator. The primary issue then is not whether Lawson is or is not entitled to benefits—Lawson will receive benefits regardless—but rather, who will pay for his benefits. Arkansas Coals presents four arguments on appeal: 1) that reconsideration is blocked by the principles of finality and the Longshore Act; 2) that reconsideration is blocked by the doctrine of collateral estoppel; 3) that the Department of Labor has waived the right to relitigate Arkansas Coals's liability; and 4) that even if the court reconsiders the question of the responsible operator, that uncontradicted evidence establishes that another company should be held liable. We consider each of these arguments in turn and conclude that Arkansas Coals was designated appropriately as the responsible operator.

**A.     Reconsideration of the Responsible Operator Designation Is Not Prohibited by the Longshore Act**

Arkansas Coals contends that the Longshore Act and principles of finality block reconsideration of the responsible operator designation and offers three arguments: 1) 33 U.S.C § 922, which controls modification of an order granting or denying benefits, prevents reconsideration of the responsible operator designation; 2) 20 C.F.R. § 725.408(b)(2), which establishes a timeline for the admission of evidence for the determination of the responsible operator, precludes the director from offering evidence in a subsequent claim after failing to submit the same proof in an earlier proceeding; and 3) 20 C.F.R. § 725.309(d)(4), which permits a claimant to bring a subsequent claim upon demonstrating a change in condition, does not allow for reconsideration of the responsible operator designation. None of these arguments is persuasive—neither 33 U.S.C § 922 nor 20 C.F.R. § 725.408(b)(2) prevent reconsideration, and 20 C.F.R.

§ 725.309(d)(4) permits a new claim—and therefore, reconsideration of the responsible operator is not barred.

**1.    33 U.S.C § 922 does not bar reconsideration of the responsible operator**

The Longshore Act, 33 U.S.C. §§ 921–22, incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932(a), provides the basic framework for granting, denying, or modifying claims and orders under the Black Lung Benefits Act.  A compensation order generally becomes final if not appealed within thirty days, 33 U.S.C. § 921(a), and a party is granted one year to seek modification of an order. 33 U.S.C § 922.  Because the Department of Labor failed to appeal the ruling or to request a modification of the responsible operator designation, Arkansas Coals claims the avenues for modification have closed.

Section 922, entitled "Modification of awards," states:

on the ground of a change in conditions or because of a mistake in a determination of fact . . . the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case [and] . . . issue a new compensation order.

33 U.S.C. § 922.  If the grounds for modification are found, the commissioner may issue "a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation."  *Id.*; *see Caudill Const. Co. v. Abner*, 878 F.2d 179, 181 (6th Cir. 1989) ("33 U.S.C. § 922 . . . may be relied upon by the deputy commissioner to correct such a *misidentification in the case of a responsible carrier*, even where a final compensation order has been issued against the operator." (emphasis added)).

Arkansas Coals argues that § 922 imposes a one-year time limit on the Department of Labor's ability to modify the responsible operator designation, citing to *USX Corp. v. Director, OWCP*, 978 F.2d 656 (11th Cir. 1992). In *USX Corp.*, the Department of Labor issued an amended award of benefits relieving USX of

responsibility for a Black Lung Benefits Claim and shifting liability onto the Trust Fund. *Id.* at 659. Then, four years later, the Department reconsidered the issue and transferred liability back to USX. USX appealed and the Eleventh Circuit held that the transfer of liability more than four years after USX had been relieved of liability for the original claim violated the one year "statute of limitations . . . [which] runs from the date of the last payment of benefits by the mine operator." *Id.* at 659. Arkansas Coals argues, "[i]f four years was too long, more than sixteen years certainly also is too long." Pet. Br. at 12.

Arkansas Coals's reliance on *USX* for the proposition that § 922 imposes a binding restriction on the modification of the responsible operator is misplaced. *USX* involved an attempt to modify an award by an aggrieved party. Because the Trust Fund was the designated payer, the Department of Labor in *USX* had an incentive to fully litigate the issue of the responsible operator. The party that was forced to pay benefits was also the party restricted by the statutory limitation on modification in § 922. Here, there was no award of benefits. Thus, it would be counterintuitive for a prevailing party, who is not responsible for the payment of any benefits, to nonetheless seek modification of the order. *See Lisa Lee Mines v. Director, OWCP*, 86 F.3d 1358, 1363 (4th Cir. 1996) (en banc), *cert. denied*, 519 U.S. 1090, (1997); *accord Peabody Coal Co. v. Spese*, 117 F.3d 1001, 1008 (7th Cir. 1997) (en banc). Such an interpretation of § 922 would mandate preventative litigation and waste time and resources.

Finally, while Arkansas Coals is correct that 33 U.S.C. § 922 creates a mechanism for modifying an award, it does not prohibit other mechanisms for bringing a new claim. As discussed previously, pneumoconiosis is a latent disease that can arise years after exposure to coal particulates. It is reasonable for the Department of Labor, in an attempt to accommodate a congressional directive, to have one mechanism for modification of an order within a one-year time frame based on a mistake of fact or change of condition and a separate mechanism for bringing at a later point in time a *subsequent claim*. These two objectives are not in conflict, and this court is bound to give deference to the agency's interpretation of its own regulation, as long as that

interpretation is not plainly erroneous or inconsistent with the regulation.[3] *Cumberland River*, 690 F.3d at 485. Moreover, the plain language of §725.309(d)(4) authorizes a claimant, whose first claim was denied, to bring a *new* claim after demonstrating a change in condition. Based on these reasons, we conclude that 33 U.S.C § 922 does *not* bar reconsideration of the responsible operator designation.

> **2.    20 C.F.R. § 725.408(b)(2) does not preclude the director from offering evidence in a subsequent claim after failing to submit the proof in an earlier proceeding**

Arkansas Coal argues that 20 C.F.R. § 725.408(b)(2) "precludes the Director from offering evidence later, having failed to submit its proof in the initial proceeding." Pet. Br. at 19. Section 725.408(b)(2) indicates that "[n]o documentary evidence *relevant to the grounds set forth in paragraph (a)(2)* may be admitted in any further proceedings unless it is submitted within the time limits set forth in this section." 20 C.F.R. § 725.408(b)(2) (emphasis added). Arkansas Coals contends that this section provides a strict timeline for collection of *all* documentary evidence relating to the identification of a responsible operator. This theory is not supported.

Section 725.408 is entitled "Operator's Response." Even more tellingly, subsection (a)(2),[4] which is referenced by subsection (b)(2), is narrowly and clearly focused on when and how an *operator* may contest its identification to a director. Subsection (a)(2) says nothing about the conditions under which a *director* can present additional evidence in further proceedings. The notion that this subsection acts as a restriction on when and how the director can present evidence is completely unsubstantiated.

---

[3] Arkansas Coals contends that deference is not warranted because the Department's argument in the present case is at odds with the Department's position in *Cochran v. Westmoreland Coal Co.*, 21 Black Lung Rep. (Juris) 1-90 (Ben. Rev. Bd. 1998). We are not persuaded. *Cochran* involved a collateral order challenge by the Department of Labor during *on-going* litigation. The present case involves finalized claims and therefore is distinct.

[4] Section 725.408(a)(2) provides: "If the *operator contests its identification*, it shall, on a form supplied by the district director, state the precise nature of its disagreement by admitting or denying each of the following assertions. In answering these assertions, the term 'operator' shall include any operator for which the identified operator may be considered a successor operator pursuant to § 725.492." 20 C.F.R. § 725.408(a)(2) (emphasis added).

### 3.     Relitigation of the responsible operator is permitted under 20 C.F.R. § 725.309(d)(4)

Section 725.309(d)(4) controls the balance between promoting finality of claims and allowing the court to reopen suit and reconsider findings.  The regulation, which is titled "Additional claims; effect of a prior denial of benefits" provides:

> If the claimant demonstrates a change in *one of the applicable conditions* of entitlement, *no findings* made in connection with the prior claim, except those based on a party's *failure to contest an issue* (*see* § 725.463), shall be binding on any party in the adjudication of the subsequent claim.  However, any stipulation made by any party in connection with the prior claim shall be binding on that party in the adjudication of the subsequent claim.

20 C.F.R. § 725.309 (emphasis added).  As both parties acknowledge that Lawson's health status has materially changed since his first claim was filed, this regulation controls.  Under § 725.309(d)(4), *no findings*, which would include the designation of a responsible operator, are binding.  This provides clear authority for relitigation of Arkansas Coals's liability.

Arkansas Coals nonetheless argues that the responsible employer determination is separate and independent of issues concerning a miner's health.  But the regulation does not distinguish between health and other issues, and this court is bound to give deference to the department's interpretation of the regulation.  *See Cumberland River*, 690 F.3d at 485.  Under a plain language reading of the statute, the determination of the responsible operator would appear to be a "finding" subject to reconsideration in a subsequent claim just like any other finding.

The claim that all findings, including the responsible operator designation, will be reconsidered is further supported by the proposed rulemaking commentary of § 725.309.  And as the Supreme Court has explained, when an agency interprets its own regulation, the Court, as a general rule, defers to it "unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'" *Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 880 (2011) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)); *see also id.* at 882 (noting that "Official Staff Commentary promulgated by the [Federal Reserve]

Board as an interpretation of [a] Regulation . . . may warrant deference as a general matter.")  The following commentary addresses the issue of subsequent claims and whether findings are binding:

> [A]ssume that in a prior adjudication an administrative law judge found that the claimant was a miner but that he did not suffer from pneumoconiosis . . . In a subsequent claim, the claimant establishes that he now suffers from pneumoconiosis, and argues that the operator is precluded from relitigating his status as a miner.  The claimant is incorrect.  Because the operator was not aggrieved by the denial of benefits, it could not appeal the ALJ's decision to the Benefits Review Board to seek reversal of the finding that the claimant was a miner.  The operator thus did not have a full and fair opportunity to litigate the claimant's status, and may not be bound by the prior finding.

62 Fed. Reg. 3353 (Jan. 22, 1997).[5]  Not only does the benefit of allowing fresh findings inure to claimants *and* coal operators alike,[6] but granting the right to *both* parties to recontest findings makes practical sense given the successful litigant's limited inclination and ability to challenge the decision. Arkansas Coals fails to point to any commentary or case indicating that the determination of the responsible operator in an initial claim, where benefits are denied, would later be enforced in a subsequent claim.

Arkansas Coals argues in the alternative that the Department failed to "contest" the responsible operator designation, and therefore, conceded the issue.  Section 725.309(d)(4) provides "no findings made in connection with the prior claim, *except those based on a party's failure to contest an issue* (see § 725.463), shall be binding." 20 C.F.R. § 725.309(d)(4) (emphasis added).  We find that the responsible operator designation was a contested issue in the first claim.  The director identified the

---

[5]*See also* 65 Fed. Reg. 79973 (Dec. 20, 2000) ("Where that finding was not essential to the original denial of benefits, because the ALJ ultimately denied benefits on another basis, or used alternative bases, issue preclusion would not prevent a second fact finder from making a different finding, based on his independent weighing of the evidence, in connection with an additional claim."); 64 Fed. Reg. 54985 (Oct. 8, 1999) (rejecting a comment that claimants should not have to relitigate elements of entitlement established in earlier litigation because where a claim was denied "the party opposing entitlement had no opportunity to seek to overturn findings that were favorable to the miner").

[6]*See* 64 Fed. Reg. 54966-01 (Oct. 8, 1999) ("Just as the rules of issue preclusion would not allow a coal mine operator to rely on the miner's previous inability to prove one element of entitlement when the miner's condition with respect to another element has changed, those rules also prohibit a miner from relying on a previous finding which the opposing party did not have an opportunity to fully litigate.").

responsible operator designation as an issue for the initial ALJ and submitted a response to Arkansas Coals's Motion to Dismiss the Employer. After concluding that there was a "substantial dispute as to issues of fact," the ALJ denied the Motion to Dismiss and invited "the Director . . . to introduce this evidence at the hearing." Order Mot. to Dismiss the Employer. The director subsequently failed to defend further the designation before the ALJ.

While less than perfect, the director's conduct satisfied the requirement that a party "contest an issue." Whether a party has contested an issue is defined in reference to § 725.463. Section 725.463(a) provides that "the hearing shall be confined to those contested issues which *have been identified by the district director* (*see* § 725.421) or any other issue raised in writing before the district director" 20 C.F.R. § 725.463(a) (emphasis added). And § 725.421 indicates that the director must provide a statement of "contested and uncontested issues in the claim." Furthermore, the Department of Labor's regulations have interpreted the term "uncontested" to mean where a party has "knowing[ly] relinquish[ed]" the right to litigate an issue. 62 Fed. Reg. 3338-01 (Jan. 22, 1997). The director's "statement" of contested issues, which is little more than a checklist of issues that are disputed by the parties, indicates that the responsible operator was a contested issue. We also note that the director did not solely rely on this statement. The director also filed a written response in opposition to the motion to dismiss, stating that Martin Mining was uninsured on the date of Lawson's last exposure and that Arkansas Coals was therefore the responsible operator. Undoubtedly, the director could have done more—and in the process possibly forestalled this appeal—but the fact that the issue was identified *and* contested indicates that the department had not "knowingly relinquished" the right to relitigate. Thus, the director's conduct does satisfy the requirements of § 725.309(d)(4).

In conclusion, the claim that the Longshore Act and principles of finality bar relitigation of the responsible operator designation is not supported by the text of the regulation, the relevant case law, the underlying statutory purpose, or the department's explanatory commentary. As there has been a change in Lawson's medical condition,

we conclude reconsideration of the responsible operation designation is permitted under 20 C.F.R. § 725.309(d)(4).

**B.      Collateral Estoppel Bar Does Not Reconsideration of the Responsible Operator**

Arkansas Coals also argues that the doctrine of collateral estoppel bars reconsideration of the company's designation as a responsible operator.  This argument also fails.  Collateral estoppel, otherwise termed issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (internal citation and quotation marks omitted).  The doctrine has been applied to administrative decisions, particularly when an agency acts in a judicial capacity and issues a final determination. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991).  There are four requirements for issue preclusion to apply:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012).  The parties agree that the first and third requirements have been satisfied.  They disagree whether the second and fourth requirements have been fulfilled.

Arkansas Coals argues that identification of the actual parties was necessary to the outcome of the proceeding because the ALJ could not have assessed the claim without first determining the parties.  In other words, determination of parties was a critical threshold issue. The Department of Labor counters that the claim was denied on the basis of medical evidence, making the determination of the responsible operator immaterial.  At its core, the parties are contesting what it means for something to be "necessary."

The Department of Labor has the stronger position. The word "necessary" modifies "*outcome of the proceeding*." "To say that X is 'necessary' to Y is the same thing as saying that it is impossible for Y to exist unless X also exists." *Bies v. Bagley*, 535 F.3d 520, 525 (6th Cir. 2008). The ALJ could have denied the first claim without having addressed the issue of the responsible operator. One can easily imagine a case where multiple parties are involved, there is a debate over the issue of the responsible operator, and the ALJ bypasses the question entirely by dismissing the claim on other grounds. The fact that the ALJ in this case *did* address the issue of the responsible operator does not make its determination necessary.

This conclusion—that the identification of the responsible operator is not "necessary" when benefits are not awarded—is supported by other Benefits Review Board determinations. *See M.R. v. Karst Robbins Coal Co.*, BRB No. 09-0119 BLA, 2009 WL 3794427, at *6 (Ben. Rev. Bd Oct. 21, 2009) (unpub.) (stating that collateral estoppel does not preclude relitigation of the responsible operator issue because "benefits were denied in claimant's original claim, and thus, the determination as to the responsible operator was not necessary to support the denial of benefits"); *O.Y. v. Golden Chip Coal Corp.*, BRB No. 06-0888 BLA, 2008 WL 3860901, *2 (Ben. Rev. Bd. July 24, 2009) (unpub.); *Hughes v. Clinchfield Coal Co.,* 21 Black Lung. Rep. (Juris) 1-134, 1-137 (Ben Rev. Bd. 1999) (*en banc*). Though this court is not bound by the Board's determinations, they do constitute persuasive evidence. *See Kentland Elkhorn Coal Corp. v. Hall*, 287 F.3d 555, 567 (6th Cir. 2002).

Arkansas Coals has not provided any contrary authority to indicate that the identification of the responsible operator is "necessary" when benefits are *not awarded*. And the cases, which Arkansas Coal cites for the proposition that collateral estoppel prevents relitigation, actually involve the award of benefits or civil damages. *See Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 744 (6th Cir. 1997); *Gen. Elec. Med. Sys. Europe v. Prometheus Health*, 394 F. App'x 280 (6th Cir. 2010); *USX*, 978 F.2d 656 (11th Cir. 1992)). It is logical that where benefits are awarded, a responsible operator must be decided to determine who pays. As benefits were not awarded in the present case, and

as no case authority has been presented suggesting a contrary interpretation, the responsible operator determination was not necessary to the original ruling and collateral estoppel does not apply.

**C.       The Department of Labor Has Not Waived the Right to Relitigate Arkansas Coals's Liability**

Arkansas Coals argues that by failing to produce evidence before the ALJ, the director waived the right to relitigate the designation of the responsible operator. In support of this claim, Arkansas Coals cites to *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 744 (6th Cir. 1997). In *Jonida*, the Benefits Review Board *awarded* a claimant black lung benefits and the employer appealed, arguing that it had been improperly designated the responsible operator. The court first noted that the employer had been informed that it was potentially liable and had failed to respond within the appropriate time frame. Based on these facts, the court held that the employer "waived the right to dispute its liability as the responsible operator," as it had not shown good cause for its failure to respond. *Id.* Arkansas Coals argues that *Jonida* is analogous to the present case. According to Arkansas Coals, the director was informed of the putative responsible operator designation and failed to present evidence supporting the designation, thereby waiving its right to later contest the ALJ's determination.

*Jonida* is distinguishable on three grounds. First, although the Department of Labor did not present *supplemental* evidence, it actually contested Arkansas Coals's motion to dismiss and the issue of the responsible operator before the ALJ. Second, *Jonida* involved only a single claim and appeal, not an appeal brought on a successive claim. Finally, *Jonida* involved an actual award of benefits, and therefore, the responsible operator presumably had a fuller incentive to litigate its designation. As *Jonida* is distinguishable and the Department of Labor contested the responsible operator designation, *see supra*, the Department has not waived the right to relitigate.

**D.    The Naming of Arkansas Coals as the Responsible Operator Is Supported by Substantial Evidence**

Finally, Arkansas Coals argues that the evidence establishes that it was not the responsible operator.  An ALJ's factual determinations are considered "conclusive if they are supported by substantial evidence and are in accord with the applicable law." *Morrison*, 644 F.3d at 478.  "Substantial evidence is defined as relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Cumberland*, 690 F.3d at 483.  In other words, factual determinations must "rest within the realm of rationality." *Morrison*, 644 F.3d at 478.  If the substantial evidence standard is met, this court cannot easily set aside the ALJ's findings.  "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *Id.* (internal citation and quotation marks omitted).

Substantial evidence supports the ALJ's conclusion that Arkansas Coals was properly designated as the responsible operator.  Arkansas Coals employed Lawson from 1980 to 1982, satisfying the one year employment requirement.  Subsequent to this, various coal companies employed Lawson, but only Martin Mining employed him for longer than one full year.  When Arkansas Coals challenged its designation as the responsible operator, the director provided a statement, pursuant to § 725.495(d), that he had searched the relevant records and discovered that Martin Mining neither had an insurance policy, nor was an approved self-insurer, when Lawson worked for the company.  *See* Resp'd Apx. at 19, Statement Req. by 20 C.F.R. § 725.495(d).  As previously indicated, "[s]uch a statement [is] prima facie evidence that the most recent employer is not financially capable of assuming its liability for a claim," *id.*, and therefore, the burden shifts to the designated responsible operator to "demonstrate that the more recent employer possesses sufficient assets to secure the payment of benefits in accordance with § 725.606." § 725.495(c).  Arkansas Coals has not satisfied this burden.

Just as it argued before the ALJ, Arkansas Coals attempts to rebut the presumption that it was the responsible operator with testimony from Gearheart, suggesting that Martin Mining was a contractor for a third company, RMJ. Far from providing clarity on the question of whether Martin Mining was capable of securing the payment of benefits, Gearheart's testimony is unclear and at times inconsistent. For example, when Gearheart was questioned on whether Martin Mining had a contract to mine coal for another company, BMC, Gearheart responded, "No. They was—we—let's see. RMJ. Martin T. Mining. I believe that was the name of it. *I can't remember*. Edgar Jones." Pets. Apx. 65 (emphasis added). When later questioned whether RMJ was responsible for covering the black lung insurance for workers like Lawson, Gearheart indicated that RMJ was, but then stated that he had no proof that RMJ had actually acquired insurance. Gearheart assumed that insurance existed because Kentucky law required insurance. Thus, even assuming that Martin Mining contracted for RMJ, which is not entirely clear, Gearheart's testimony fails to demonstrate that RMJ actually acquired insurance to secure the payment of benefits.

Arkansas Coals argues in the alternative that Martin Mining was related or a sub-entity of Coker Coal Company and that Coker Coal should be held liable. But when Gearheart was asked about the relationship between Coker Coal and Martin Mining, he clarified, "We had Coker Coal Company, also . . . That's a different coal company [from Martin T. Mining]." *Id.* at 66. Then when asked if Lawson worked for Coker Coal, he stated he could not remember. Thus, there is no actual evidence that Coker Coal was a successor to Martin Mining, that Lawson worked for Coker Coal, or that Coker Coal had sufficient assets to cover the benefits.

Taken together, it is clear that the ALJ was correct when it assessed Gearheart's testimony as oblique, "marred by faulty memory," and "fall[ing] far short of carrying the Employer's burden." Decision and Order Awarding Benefits. As no other persuasive evidence has been presented to satisfy the employer's burden, we find that there is substantial evidence that Arkansas Coals is the responsible operator.

## III.

For the aforementioned reasons, we **AFFIRM** the Benefits Review Board's decision.