NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0632n.06

No. 17-3057

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANDALEX RESOURCES, INC., | ) | |
| | ) | |
| Petitioner, | ) | **FILED** |
| | ) | Nov 14, 2017 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| DIRECTOR, OFFICE OF WORKERS' | ) | |
| COMPENSATION PROGRAMS, UNITED | ) | ON PETITION FOR REVIEW OF AN |
| STATES DEPARTMENT OF LABOR, | ) | ORDER OF THE BENEFITS REVIEW |
| | ) | BOARD, UNITED STATES |
| and | ) | DEPARTMENT OF LABOR |
| | ) | |
| EDDIE SMITH, | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

BEFORE:   DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Andalex Resources, Inc., petitions for review of an order of the Benefits Review Board (BRB) that held Andalex liable to Eddie Smith for benefits to compensate him for the pneumoconiosis he contracted through his coal mine employment. Neither Andalex nor Smith nor the director of the Department of Labor's Office of Workers' Compensation Programs now contests Smith's eligibility for the benefits. Andalex, however, insists that it is not liable for the payments and that Ikerd-Bandy, a subsequent employer of Smith, is the proper "responsible operator" to whom Smith should look for

compensation. We conclude that the administrative law judge did not err in designating Andalex as the responsible operator. We thus deny the petition for review.

In 1969, Congress passed the Black Lung Benefits Act, 30 U.S.C. §§ 901–944, in part "to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis," a condition defined in the Act as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. §§ 901(a), 902(b). Pursuant to regulations promulgated to carry out the mandates of the Act, "coal mine operators are liable to the maximum extent feasible for awarded claims." *Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 313 (6th Cir. 2014) (internal quotation marks and citation omitted).

As a general matter, "[t]he operator responsible for the payment of benefits" is the company "that most recently employed the miner." 20 CFR § 725.495(a)(1). In order to be designated as the responsible operator, however, a coal mining company must have employed the disabled miner "for a cumulative period of not less than one year." 20 CFR § 725.494(c). Under the relevant regulations, the term "Year means a period of one calendar year (365 days, or 366 days if one of the days is February 29), or partial periods totaling one year, during which the miner worked in or around a coal mine or mines for at least 125 'working days.'" 20 CFR § 725.101(a)(32). Furthermore:

> (ii)  To the extent the evidence permits, the beginning and ending dates of all periods of coal mine employment must be ascertained. The dates and length of employment may be established by any credible evidence including (but not limited to) company records, pension records, earnings statements, coworker affidavits, and sworn testimony. If the evidence establishes that the miner's employment lasted for a calendar year or partial periods totaling a 365-day period amounting to one year, it must be presumed, in the absence of evidence to the contrary, that the miner spent at least 125 working days in such employment.
> (iii)  If the evidence is insufficient to establish the beginning and ending dates of the miner's coal mine employment, or the miner's employment lasted less than a calendar year, then the adjudication officer may use the following formula: divide the miner's yearly income from work as a miner by the coal mine

industry's average daily earnings for that year, as reported by the Bureau of Labor Statistics (BLS).

20 CFR § 725.101(a)(32)(ii) and (iii).

The record in this case, including Internal Revenue Service W-2 Wage and Tax Statements and Social Security Administration earnings records, establishes that Smith worked for Andalex from 1988 until December 1993. However, beginning in December 1993 and continuing until March 1994—when Smith suffered a heart attack—the miner was employed by Ikerd Bandy Company, Inc. Because IRS and Social Security documents indicated that Smith received money from Ikerd Bandy in both 1994 and 1995, Andalex contends that the miner worked for Ikerd Bandy for at least one year, making Ikerd Bandy the proper responsible operator liable for payments to Smith for his disabling pneumoconiosis.

In further support of its position, Andalex points to Smith's June 2010 deposition testimony in which the miner stated, when asked how long he had worked for Ikerd Bandy, "I think it was around two year[s] I think. I ain't for sure." Smith also was unsure when he began work for Ikerd Bandy and knew only that his last day of work with that company "was 1994 somewhere."

Smith gave a second deposition in October 2012, and in that testimony, he again stated that he could not say for sure how long he actually worked for Ikerd Bandy. He did agree, however, that his tenure with that company probably "was a little bit less than a year." Finally, in December 2012, when asked during the hearing before an administrative law judge whether he had worked for Ikerd Bandy from December 1993 until March 1994, Smith replied, "Yeah, that sounds right."

In light of Smith's uncertainty regarding the length of his employment with Ikerd Bandy, the administrative law judge "f[ou]nd Claimant is not a good historian of his coal mine

employment, gave his testimony on the issue "little probative weight," and concluded "that Andalex has produced insufficient evidence to establish that Claimant worked for Ikerd-Bandy for one year or more after his employment with Andalex." Andalex appealed to the BRB the administrative law judge's decision requiring the company to pay pneumoconiosis benefits to Smith. The BRB agreed with the administrative law judge that little probative weight should be given to Smith's own testimony regarding the length of his employment with Ikerd Bandy. Nevertheless, the Board noted that "the administrative law judge did not make specific findings or explain how he determined that the [Social Security] records, which reflect earnings from Ikerd in 1994 and 1995, do not support a finding of employment for at least one year." Consequently, the BRB remanded the case to the administrative law judge "to explain with specificity whether the evidence supports a finding that Ikerd employed the miner for a period of at least one year."

On remand, the administrative law judge found no evidence in the record that established conclusively "the beginning and ending dates of Claimant's employment with Ikerd Bandy." Furthermore, the administrative law judge noted that "[w]hile the record confirms that Claimant was employed by Ikerd Bandy in 1994 and 1995, that evidence is insufficient to conclude that Claimant was employed for a period of one calendar year or partial periods totaling one year in order to establish a year as defined by the regulations." Thus, in order to determine if Smith worked the requisite 125 days for Ikerd Bandy in any twelve-month period during the years 1994 and 1995, the administrative law judge resorted to the calculation explained in 20 CFR § 725.101(a)(32)(iii), whereby the miner's yearly income from mining activities is divided by "the coal mine industry's average daily earnings for that year." As explained by the administrative law judge:

> The average daily rate in 1994 was $142.08. Exhibit 610. Claimant earned $10,705.31 in 1994, and at a daily rate of $142.08, he would have worked for Ikerd Bandy for 75 days. The average daily rate in 1995 was $147.52. Exhibit 610. Claimant earned $2,485.71 in 1995, and at a daily rate of $147.52, he would have worked for Ikerd Bandy for 17 days. Thus, Claimant worked for Ikerd Bandy for a total of 92 days in 1994 and 1995. Even if Employer had established that Claimant worked for a year with Ikerd Bandy, the evidence does not establish 125 working days. Accordingly, I again find that Andalex has produced insufficient evidence to establish the Claimant worked for Ikerd-Bandy for one year or more after his employment with Andalex.

Thus, the administrative law judge properly designated Andalex as the responsible operator liable for payment of Smith's benefits, and the BRB affirmed that decision.

Pursuant to the explicit language of 20 CFR § 725.495(c)(2), "[t]he designated responsible operator shall bear the burden of proving . . . [t]hat it is not the potentially liable operator that most recently employed the miner." In an effort to satisfy that burden, Andalex points to the facts that Smith, in his 2010 deposition, indicated he might have worked for Ikerd Bandy for two years and that Smith's IRS and Social Security documents showed that the miner received income from Ikerd Bandy in both 1994 and 1995. According to Andalex, such evidence is sufficient to establish both the beginning and the ending dates of Smith's employment with Ikerd Bandy, rendering inapplicable the calculations undertaken by the administrative law judge to determine whether Smith had worked 125 days within a twelve-month period at an Ikerd Bandy mine site.

On appeal, we, like the BRB, must determine "whether the ALJ—not the Board—had substantial evidence upon which to base his or her decision." *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997). "'Substantial evidence' means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brandywine Explosives & Supply v. Dir., OWCP*, 790 F.3d 657, 664 (6th Cir. 2015) (internal quotation marks and

citations omitted). Our review of the appellate record leaves us with no doubt that substantial evidence indeed did support the conclusions of the administrative law judge in this matter.

First, it is true that Smith did testify in his first deposition that he *thought* that he worked for Ikerd Bandy for "around two year[s]." However, in addition to the fact that Smith only thought he had been employed for that length of time, the miner also stated, "I'm not for sure." Moreover, in a subsequent deposition and in testimony before the administrative law judge, Smith agreed that he probably worked for Ikerd Bandy "a little bit less than a year," and that it "sound[ed] right" that his Ikerd Bandy employment lasted from December 1993 until March 1994.

Second, all medical evidence before the administrative law judge confirmed that Smith's coal mine employment ended no later than March 1994. Dr. Glen Baker reported that Smith's last coal mine employment was from July 1988 to December 1993—the dates of Smith's employment with Andalex. Both Dr. Bruce Broudy and Dr. Byron Westerfield noted in their reports that Smith stopped working in 1994 after suffering a heart attack.

Finally, the evidence collected by the claims examiner for the Office of Workers' Compensation noted that the Kentucky State Workers' Compensation Settlement Agreement verified that Smith ceased working for Ikerd Bandy in March 1994. Although Smith's W-2 Statement and earnings records showed receipt of wages from the coal company in 1995, the examiner hypothesized that those earnings "could represent unpaid sick and vacation leave." In short, contrary to Andalex's assertions, no evidence in the record conclusively establishes an ending date of coal mine employment in 1995. Consequently, in light of Smith's receipt of some salary in that year, the administrative law judge properly resorted to the calculation set out in 20 CFR § 725.101(a)(32)(iii) to determine whether the claimant worked at least 125 days during

the 1994-1995 period during which he received money from Ikerd Bandy. And, as set forth in the administrative law judge's written decision on remand from the BRB, use of that calculation shows that Smith was employed by Ikerd Bandy for no more than 92 days during the 1994-1995 years. Substantial evidence thus supports the administrative law judge's determination that Andalex is the proper responsible operator liable for the payment of Smith's benefits under the Black Lung Benefits Act.

## CONCLUSION

For the reasons set forth, we conclude that substantial evidence supports the administrative determination that Andalex, and not Ikerd Bandy, was the last coal mining company that employed Eddie Smith for at least one year, as that time period is defined in the applicable regulations. We thus deny Andalex's petition for review.