**JONIDA TRUCKING, INCORPORATED,**
**Petitioner,**

**v.**

**Robert F. HUNT; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 96–3472.**

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1997.

Decided June 26, 1997.*

---

\* This decision was originally issued as an "unpublished decision" filed on June 26, 1997. On August 13, 1997, the court designated the opinion as one recommended for full-text publication.

John G. Paleudis (argued and briefed), Hanlon, Duff, Paleudis & Estadt, St. Clairsville, OH, for Petitioner.

Robert F. Hunt, Quaker City, OH, Respondent pro se.

Kathleen M. Bole (argued and briefed), Patricia Nece (briefed), U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Respondent Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: JONES, SUHRHEINRICH, and SILER, Circuit Judges.

## OPINION

SILER, Circuit Judge.

Petitioner, Jonida Trucking, Inc. (Jonida), seeks review of a decision of the Benefits Review Board (the Board), finding it liable to Robert F. Hunt, claimant, for black lung benefits. Jonida claims that the Administrative Law Judge's (ALJ's) refusal to permit withdrawal of Hunt's claim was in error. Alternatively, Jonida contests the award of benefits to Hunt and the requirement that Jonida secure payment of the total amount of the award. For the reasons set forth below, we affirm the decision of the Board.

### I.

Hunt was employed by Kovacs Trucking Company as a truck driver hauling coal. On February 2, 1986, Hunt had a heart attack and quit his job as a truck driver. He now works as a part-time watchman for Jonida. Jonida is the corporate reorganization of the partnership formerly known as Kovacs Trucking Company.

The Department of Labor's Office of Workers' Compensation Programs (OWCP) notified Jonida by letter dated July 20, 1987, that Hunt had filed a claim for black lung benefits on June 6, 1987, and that it had begun developing evidence to determine his eligibility. This letter informed Jonida that it had been identified as the party potentially responsible for the payment of Hunt's benefits. Jonida never responded to notice of the claim.

OWCP denied Hunt's claim and served a copy of the denial letter on Jonida. Hunt requested a formal hearing on the matter. Before the claim was forwarded for the formal hearing, OWCP held an informal conference, which was attended by Hunt and his attorney. No one appeared on Jonida's behalf. OWCP affirmed its previous denial and notified the parties that they had thirty days to respond. Neither party responded within that time period.

Seven months later, Hunt's counsel wrote to OWCP inquiring about the status of Hunt's "appeal." OWCP treated the inquiry as a request to modify the denial and denied the request. After Hunt again requested a hearing, OWCP forwarded the case to the ALJ, who held a hearing on June 4, 1990. No appearance was entered by Jonida. The ALJ found evidence sufficient to establish that Hunt was totally disabled due to pneumoconiosis within the meaning of 20 C.F.R. Part 718 and held Jonida liable for payment of the benefits.

Jonida began making interim benefits payments to Hunt. Because the owner of Jonida, John Kovacs, was a long-time friend of Hunt and because Jonida had provided Hunt with a job and medical coverage after his disability, Hunt did not wish to receive benefits payments unless they came from the Black Lung Disability Trust Fund (the Trust Fund). Hunt therefore returned every monthly check, along with a release, waiver, and discharge of any claim he or his heirs might have against Jonida and Kovacs Trucking arising out of the ALJ's decision. He reserved any rights he may have against the Trust Fund.

Jonida moved the ALJ to reconsider the award of benefits. Kovacs submitted an affidavit explaining that Jonida had previously failed to contest the claim because it had relied on information from Hunt that any award would run against the Trust Fund and not against Jonida or Kovacs. Hunt, in turn, apparently received this misinformation from an employee of the St. Clairsville, Ohio OWCP office. Jonida argued that Hunt desired to withdraw his claim.

Mrs. Hunt wrote letters to the ALJ explaining that she and her husband only wanted benefits from the Trust Fund. When she was told that this was not possible, she expressed a desire to have the claim withdrawn. Eventually, counsel for Hunt filed a motion for withdrawal of the claim. The ALJ denied the request for withdrawal and rejected Jonida's arguments on the merits. The ALJ ordered Jonida to secure the payment of $150,000. Jonida appealed to the Board, which affirmed the ALJ's rulings. Jonida now appeals to this court.

## II.

■ A decision by the Board must be affirmed on appeal if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations. *Director, OWCP v. Quarto Mining Co.*, 901 F.2d 532, 536 (6th Cir.1990). Review on appeal should be focused on whether the ALJ—not the Board—had substantial evidence upon which to base his or her decision. *Zimmerman v. Director, OWCP*, 871 F.2d 564, 566 (6th Cir.1989). Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 488 (6th Cir.1985).

### A. Withdrawal of Hunt's Claim

■ 20 C.F.R. section 725.306 provides for the withdrawal of a claim:

(a) A claimant or an individual authorized to execute a claim on a claimant's behalf ..., may withdraw a previously filed claim provided that:

(1) He or she files a written request with the appropriate adjudication officer indicating the reasons for seeking withdrawal of a claim;

(2) The appropriate adjudication officer approves the request for withdrawal on the grounds that it is in the best interests of the claimant ..., and;

(3) Any benefits previously paid with respect to the claim are reimbursed.

(b) When a claim had [sic] been withdrawn under paragraph (a) of this section, the claim will be considered not to have been filed.

Jonida claims that the Board should have allowed withdrawal of Hunt's claim because there was a written request for withdrawal and because there are no benefits to repay Jonida, as Hunt has refused to accept all payments tendered. Jonida contends that the ALJ and the Board erred in determining that withdrawal, an action that Hunt apparently desires, is not in Hunt's best interests.

■ The Director of OWCP counters that Jonida does not have standing to assert the withdrawal claim on behalf of its employee, Hunt. The Supreme Court has fashioned certain prudential principles that bear on the question of standing. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Serv. Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

Here, Jonida attempts to avoid liability by resting its claim for relief on the conditional right of the claimant to withdraw under section 725.306. However, Hunt has not appealed the Board's decision to deny the request for withdrawal. Section 725.306(a)(2)'s requirement that the appropriate adjudicative authority determine that withdrawal is in the best interests of the claimant protects claimants from ill-advised or coerced decisions to abandon litigation in exchange for less money or continued employment. Considering this purpose, it is clear that an employer is not the proper party to argue that its employee's best interests are served by allowing him to forfeit payments from the employer. Because Jonida's interests are at odds with the concerns of the provision in issue, Jonida is not within the zone of interests that the Department of Labor sought to protect in promulgating section 725.306(a)(2). Therefore, Jonida does not have standing to appeal the withdrawal issue. Accordingly, we now

turn to the merits of Hunt's claim for black lung benefits.

## B. Award of Benefits

### 1. Failure to Apply the Modification Standard of Review

■ Hunt's claim for benefits was denied by the Director on September 17, 1987. Hunt then requested a hearing on November 13, 1987. Instead of a hearing, however, the case went to an informal conference on December 29, 1987. By letter of January 6, 1988, Hunt was informed that he had thirty days to request a hearing. On July 26, 1988, an attorney, Thomas Hampton, informed the Department of Labor that he had obtained additional medical evidence. Hampton explained, however, that he was not representing Hunt, but rather was attempting to help him secure other legal counsel to pursue his claim. Because of the confusion over the relationship between Hampton and Hunt and because of Hunt's original request for a hearing, the ALJ treated Hampton's contact with the department as a timely appeal rather than a request for modification, even though more than thirty days had passed since the letter denying Hunt benefits.

■ Jonida argues that the ALJ should not have considered the evidence anew, but rather should have applied the modification standard of review. Accordingly, Jonida contends that the ALJ's decision (and the Board's order affirming that decision) should be vacated. This argument is unavailing. Even if the ALJ should have treated the submission of new evidence as a request for modification, rather than an appeal, the intended purpose of modification is to vest the fact-finder with broad discretion to correct mistakes, whether demonstrated by wholly new evidence, cumulative evidence, or merely after further reflection on the evidence initially submitted. *O'Keeffe v. Aerojet–General Shipyards, Inc.*, 404 U.S. 254, 256, 92 S.Ct. 405, 407, 30 L.Ed.2d 424 (1971). A claimant need not specifically plead a mistake of fact or change in conditions for a second claim filed within one year of a prior denial to be considered a request for modification. The fact-finder has the authority, if not the duty, to rethink prior findings of fact and to reconsider all evidence for any mistake in fact or change in conditions. *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 230 (6th Cir. 1994). Therefore, the ALJ's reconsideration of all the evidence was not improper. Even though he mischaracterized the proceeding as an appeal rather than a modification, error that does not affect the disposition of the case is harmless. *Belcher v. Director, OWCP*, 895 F.2d 244, 246 (6th Cir.1989).

### 2. Hunt's Claim for Benefits

■ Jonida next contends that Hunt is not entitled to benefits because he has not established "total disability due to pneumoconiosis," as required by 20 C.F.R. section 718.204(b). To prevail, Hunt must establish: 1) the existence of a totally disabling respiratory or pulmonary impairment; and 2) that pneumoconiosis contributes, at least in part, to that condition. *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1040 (6th Cir.1993). In *Youghiogheny & Ohio Coal Co. v. McAngues*, 996 F.2d 130 (6th Cir.1993), this court entertained the issue of whether a claimant whose total disability from a car accident predated his disability from pneumoconiosis could be entitled to benefits. The court held that he could, stating that "[i]f a claimant proves that he is totally disabled, and further, that the disability is at least partially the result of coal-related pneumoconiosis, then he is entitled to benefits under the Act." *Id.* at 135. Therefore, notwithstanding Hunt's cardiac condition, if pneumoconiosis contributes, at least in part, to his total disability, Hunt is entitled to benefits.

■ Jonida next argues that the ALJ's finding of total pulmonary disability is not supported by substantial evidence. The ALJ relied on section 718.204(c)(4), which permits a finding of total disability even though it could not be established under subsections (c)(1)-(3) if "a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment." 20 C.F.R. § 718.204(c)(4). Dr. DelVecchio, a physician who examined and conducted tests on Hunt, concluded that

Hunt suffered from "chronic obstructive pulmonary disease." He stated that he would "consider the patient to be 80% disabled due to exposure to coal dust only, with pneumoconiosis of moderately-severe degree." However, because Dr. DelVecchio failed to mention Hunt's cardiac condition and its effect on breathing, Jonida contends that his report carries little probative value. As explained above, the effect of Hunt's cardiac difficulties on his disability does not preclude entitlement to benefits as long as his respiratory/pulmonary impairment is due *in part* to pneumoconiosis. The relevancy of Dr. DelVecchio's report is heightened by the fact that he was aware of Hunt's heart condition and his 1986 attack, but still felt his pulmonary impairment was attributable to pneumoconiosis. DelVecchio's report supports the ALJ's ultimate decision to award benefits.

The ALJ also relied on the medical opinion of Dr. Garson in his conclusion that Hunt is entitled to benefits. Dr. Garson noted pulmonary impairment. He attributed much of Hunt's impairment to cardiac disease, but felt that some of his symptoms related to pneumoconiosis. Garson also disputed the opinion of another doctor, Dr. Long, that the pulmonary function studies were invalid.

Although DelVecchio and Garson relied on pulmonary tests exhibiting levels of impairment below that required to establish total disability under section 718.240(c)(1), these tests did demonstrate some impairment and can form a basis, along with other evidence, for a reasoned medical decision establishing total disability under section 718.240(c)(4). When coupled with the blood gas tests, the physical examinations, and the x-ray evidence, there is substantial evidence to support the ALJ's determination that Hunt is entitled to benefits. *See Muncy v. Director, OWCP*, 1991 WL 71403, at *4–5 (6th Cir. May 2, 1991) (finding that non-conforming reports may be used, in combination with other evidence, to establish total disability under section 718.204(c)(4)). Moreover, an ALJ may make a "reasoned decision to give greater deference to the opinions of the physicians who actually administered the ventilatory studies, as opposed to those of physicians who merely reviewed the results," like Long. *Worrell*, 27 F.3d 227, 231 (6th Cir. 1994).

It appears that the ALJ did, in fact, weigh all the evidence as required by section 718.204(c). Although it may be possible to reach a conclusion different from that of the ALJ, this court will defer to an ALJ's determinations of credibility and resolution of inconsistencies in testimony, including the weight to be accorded physicians' opinions, when the ALJ's determinations are supported by substantial evidence. *Worrell*, 27 F.3d at 231.

### 3. Determination that Jonida is the Responsible Operator

■ Next, Jonida disputes the finding that it is the responsible operator liable for payment of benefits to Hunt. Jonida concedes that it received notice of Hunt's claim and that the notice informed Jonida that it had been designated as the putative operator potentially liable for payment of benefits. It also concedes that it made no effort to respond within the requisite thirty-day time period. Therefore, under 20 C.F.R. section 725.413, Jonida is deemed to have accepted the finding of the Director that it is the responsible operator, unless good cause for failure to respond is shown.

It argues that its reliance on the misrepresentations of Hunt amounts to "good cause." Jonida points to the amicable relationship between Kovacs and Hunt, stating that Kovacs believed Hunt when Hunt told him that any benefits awarded to him would be paid from the Trust Fund and not from Jonida. Moreover, it points to the fact that an OWCP employee allegedly told Hunt that the payments would originate from the Trust Fund. However, the ALJ correctly concluded that it is not "the claimant's duty to render legal advice to the responsible operator, even if they share a close relationship, as in this case. The employer has the burden to secure its own legal representation to advise it of its rights and duties under the law." Because Jonida has not shown good cause for its failure to respond, it has waived the right to dispute its liability as the responsible operator.

## C. Order Requiring Jonida to Secure Payment

 Jonida correctly posits that, as a trucking company, it is not required to self-insure against future claims. 30 U.S.C. section 932(b) provides, in part:

An employer, other than an operator of a coal mine, shall not be required to secure the payment of such benefits with respect to any employee of such employer to the extent such employee is engaged in the transportation of coal or in coal mine construction. Upon determination by the Secretary of the eligibility of the employee, the Secretary may require such employer to secure a bond or otherwise guarantee the payment of such benefits to the employee.

Therefore, Jonida may be required to secure payment of benefits to Hunt because it has already been determined that he is eligible.

20 C.F.R. section 725.606 provides further insight on the matter of security for payment of benefits:

Whenever an adjudication officer deems it advisable, he or she may require any operator or other employer to make a deposit with the Treasurer of the United States to secure the prompt and convenient payment of benefits to eligible claimants. Payments may be made from such deposit, or such deposit may be returned to an operator or other employer, only upon the order of such adjudication officer. The adjudication officer shall require the deposit of security pursuant to this section in any case where an operator or other liable employer is uninsured or has failed to secure the payment of benefits.

Jonida is not insured for this claim and, therefore, must in some way secure the payment of benefits. Although the requirement of security under 30 U.S.C. section 932 appears to be discretionary, the applicable regulation makes the deposit of security mandatory in this instance. Therefore, the order requiring Jonida to secure the payment of $150,000 is affirmed.[1]

## III.

The Board's decision awarding Hunt benefits and ordering Jonida to secure payment of $150,000 is **AFFIRMED**.

---

1. The present estimated value of Hunt's award includes retroactive benefits of $28,134.80 and future benefits of $122,544.44.