RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KARST ROBBINS COAL COMPANY; BITUMINOUS
CASUALTY CORPORATION,

*Petitioners*,

*v.*

No. 19-3836

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR;
MARLIN D. RICE,

*Respondents*.

───────────────

On Petition for Review from the Benefits Review Board;
No. 17-0625 BLA.

Argued: July 29, 2020

Decided and Filed: August 7, 2020

Before: MOORE, CLAY, and McKEAGUE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Mark E. Solomons, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners. Cynthia Liao, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Timothy C. MacDonnell, WASHINGTON AND LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Respondent Marlin Rice. **ON BRIEF:** Mark E. Solomons, Laura Metcoff Klaus, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners. Gary K. Stearman, Michelle Gerdano, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Timothy C. MacDonnell, WASHINGTON AND LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Respondent Marlin Rice.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Bituminous Casualty Corp., as the insurer for Karst Robbins Coal Co. ("KRCC"), seeks review of a decision by the Department of Labor's Benefits Review Board finding Bituminous responsible for paying a claim under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901–45.  Bituminous argues that the Department was collaterally estopped from finding that KRCC was the responsible operator under the Act, because an administrative law judge had previously found that another, related company was actually the claimant's employer.  Bituminous also argues that it was entitled to rescind its insurance agreement based on alleged fraud by KRCC, and that delays in the Department's administrative proceedings violated its right to due process.  For the reasons that follow, Bituminous is incorrect on each of these counts, and so we deny its petition for review.

**BACKGROUND**

**A.  Black Lung Claims**

Marlin Rice is a former coal miner who filed a claim for benefits under the BLBA. Under that statute and its associated regulations, a miner is eligible for black lung benefits if (1) she has pneumoconiosis, which is known as black lung disease when caused by exposure to coal dust, (2) the pneumoconiosis arose out of her coal mine employment, (3) she is totally disabled, and (4) her pneumoconiosis contributes to that disability.  20 C.F.R. § 725.202(d)(2). On the second prong, if a miner worked in coal mines for ten years or more, there is a rebuttable presumption that her pneumoconiosis arose out of coal mine employment.  *Id.* § 718.203(b).

Once a miner establishes her eligibility for benefits, the next question is who must pay. To answer this question, the Department of Labor ("DOL") looks to the miner's employers to see which of them employed the miner for at least one year and are capable of paying benefits under the BLBA.  *Id.* § 725.494(c), (e).  The miner's most recent employer that meets these requirements is deemed the "responsible operator" and is forced to foot the bill.  *Id.* § 725.495(a)(1).  And to ensure that potentially responsible operators can pay out benefits, the

BLBA requires them to either qualify as a self-insurer or purchase insurance to cover any BLBA liability. 30 U.S.C. § 933(a); 20 C.F.R. § 725.494(e); *see also id.* pt. 726 (providing regulatory requirements for insurance coverage). If DOL cannot identify a responsible operator, the miner's benefits are instead paid by the Black Lung Disability Trust Fund. 26 U.S.C. § 9501(d)(1).

### B. KRCC's Insurance Coverage

Karst Robbins Coal Co. ("KRCC") operated a coal mine where Rice worked from at least June 7, 1982 to August 9, 1983. But on paper, Rice never worked for KRCC. Instead he was employed by a separate corporate entity, Karst Robbins Machine Shop, Inc. ("KRMS"), which then charged KRCC for the cost of Rice's labor. KRMS's ownership and management overlapped with that of KRCC, it had no assets, and it operated out of the same offices as KRCC.

KRCC obtained workers' compensation insurance, including BLBA coverage, from Bituminous Casualty Corp. But according to evidence submitted by Bituminous, KRCC only listed ten employees on its books. The other 150 or so were employed by KRMS, and thus covered by KRMS's separate insurance. According to both companies' shared bookkeeper, new hires would choose whether they were willing to waive workers' compensation coverage and take only disability insurance instead. If so, they would be hired as an employee of KRMS; otherwise they would work for KRCC. Bituminous describes this as a scam designed to dodge the otherwise higher premiums KRCC would have paid for BLBA and workers' compensation coverage.

### C. Procedural History

Rice filed his first claim for BLBA benefits in October 1983. During proceedings on that claim, DOL identified KRCC and KRMS, among others, as potentially responsible operators. While perhaps strange given their shared ownership and management, KRCC and KRMS retained separate counsel and argued conflicting positions: KRCC said that Rice was actually employed by KRMS, while KRMS said that it never operated a coal mine or ran a coal mining business, and so could not be considered an employer under the applicable regulations.

The administrative law judge ("ALJ") settled on KRMS as the responsible operator, leaving KRCC and Bituminous off the hook.[1]

Despite this finding, the ALJ denied Rice's claim, holding that Rice failed to establish that he had pneumoconiosis. Accordingly, Rice was ineligible for BLBA benefits. Rice then appealed to the Benefits Review Board.

During those appellate proceedings, KRCC and Bituminous (along with other employers of Rice) filed a motion to be dismissed from the case, given that the ALJ found that KRMS was the responsible operator. The Director of the Office of Workers' Compensation Programs, who represented DOL's interests in the proceedings, did not file a response. Accordingly, the Board granted the motion and dismissed KRCC and Bituminous. The Board then went on to affirm the denial of Rice's claim on the merits. The Director never filed a cross-appeal or otherwise challenged the responsible operator determination.[2]

Fast-forward more than a decade. In 2002, Rice filed another claim for benefits. During proceedings on that claim, DOL again sent a notice to KRCC and Bituminous saying that KRCC might be the responsible operator.[3] Bituminous claims it "denied coverage based on the fraudulent arrangements" between KRCC and KRMS, and so requested that DOL dismiss it from the case. (Pet'rs' Br. at 6.) After various administrative proceedings, DOL refused to dismiss Bituminous, but again denied Rice's claim. While this time Rice established that he suffered from pneumoconiosis, DOL's district director found that Rice failed to show that the pneumoconiosis was caused by his coal mine employment. This was in line with DOL's earlier finding that Rice had only worked for a little more than eight years in coal mines; as discussed

---

[1]As described more extensively in the parties' briefs, the procedural history of Rice's BLBA claims falls somewhere between Kafka and Joyce. For example, Rice's 1983 claim was initially denied by a deputy commissioner in DOL, appealed to an ALJ, remanded back to the deputy commissioner, again appealed to the ALJ, appealed to the Benefits Review Board, appealed to this Court, and then dismissed for failure to pay the filing fee. For clarity's sake, we have limited the proceedings recounted here to only what is relevant to the outcome of Bituminous's petition.

[2]This makes some intuitive sense. It seems unlikely that DOL would care who the responsible operator was, so long as the Black Lung Disability Trust Fund did not have to pay.

[3]By this point, KRMS had ceased operations.

above, at least ten years of coal mine employment is required for a presumption that any pneumoconiosis was caused by that work.  20 C.F.R. § 718.203(b).

In 2006, Rice filed another claim for BLBA benefits, and KRCC and Bituminous were again identified as potentially responsible for payment.[4]  Bituminous moved to be dismissed from the case, arguing that Rice was employed by KRMS, that its liability was precluded by res judicata, and that DOL had failed to investigate other potential carriers.  Bituminous also moved to rescind its insurance policy with KRCC on the grounds that its employee leasing scheme with KRMS constituted fraud.  The ALJ rejected all of these arguments, finding that under the governing regulations, KRCC was the responsible operator and that Bituminous was required to cover the claim.  *See* 20 C.F.R. § 725.493(a)(1) (defining employment "as broadly as possible" to "include any relationship under which an operator retains the right to direct, control, or supervise the work performed by a miner, or any other relationship under which an operator derives a benefit from the work performed by a miner"); *see also id.* ("It is the specific intention of this paragraph to disregard any financial arrangement or business entity devised by the actual owners or operators of a coal mine or coal mine-related enterprise to avoid the payment of benefits to miners who, based upon the economic reality of their relationship to this enterprise, are, in fact, employees of the enterprise.").

Nevertheless, the ALJ denied Rice's claim.  According to the ALJ, Rice's claim was a "subsequent claim" under the applicable regulations, meaning Rice had to demonstrate that "one of the applicable conditions of entitlement [to benefits] has changed since the date upon which the order denying the prior claim became final."  20 C.F.R. § 725.309(c) (citations omitted).  Because the denial of Rice's 2002 claim was based solely on his failure to show that his pneumoconiosis was caused by coal mine employment, and because this "is not something that can change over time," Rice could not show his eligibility under the BLBA.  (App. at 92.)

Rice appealed this denial to the Benefits Review Board, and Bituminous cross-appealed the responsible operator designation.  But the Board remanded the case to the ALJ, finding in part that Rice's filing was not a "subsequent claim" but rather a request for modification based

---

[4]In 2007, while this claim was pending, KRCC was dissolved in bankruptcy.

on its proximity in time to another 2005 filing by Rice. (*Id.* at 76.) Following this remand, during a years-longer procedural morass, another ALJ revealed that Rice's attorney had specifically told a DOL claims examiner years earlier, in ex parte phone calls, not to adjudicate that earlier filing as a modification request. This meant that the 2006 filing had correctly been construed as a subsequent claim. While the claims examiner recorded this information in "note[s] to file," these notes were misfiled and so were not included in the record before the earlier ALJ or the Board. (*Id.* at 9–10 (alteration in original).) This new information then went back up to the Board and back down to the original ALJ, who in 2013 decided that his original decision had gotten it right: the 2006 filing was indeed a subsequent claim, and so was properly denied. The delay in revealing the ex parte discussion between the claims examiner and Rice's counsel, and the additional proceedings that occurred as a result, is one of the things that Bituminous complains of today.

Later in 2013, Rice filed a request for modification, which worked its way back to an ALJ. After a hearing, and for the first time during the three decades of Rice's BLBA proceedings, the ALJ found that Rice was eligible for benefits. Specifically, he found that the previous denials of Rice's claim had been based on mistaken determinations of facts. Reviewing the record, the ALJ found that after including a period of off-the-books employment gathering "house coal" from smaller mines for in-home use, Rice had at least ten years of coal mine employment. (*Id.* at 30–31.) This was enough to trigger the presumption that Rice's pneumoconiosis was caused by coal mine work. *See* 20 C.F.R. § 718.203(b).

Bituminous then appealed to the Benefits Review Board. There, Bituminous argued that (1) collateral estoppel precluded the designation of KRCC as the responsible operator, (2) Bituminous was entitled to rescind its insurance agreement with KRCC based on its allegations of fraud, (3) the late disclosure of the claims examiner's ex parte communication with Rice's counsel violated Bituminous's right to due process, and (4) the ALJ erred in crediting Rice with at least ten years of coal mine employment and in weighing the medical evidence. The Board rejected all of Bituminous's arguments and affirmed the ALJ's decision, and later denied Bituminous's petition for rehearing en banc. Bituminous then filed a petition for review in this

Court, and now raises the first three arguments listed above that it presented to the Benefits Review Board.[5]

## DISCUSSION

### A.  Standard of Review

On petitions for review from the Benefits Review Board, we review the Board's legal conclusions de novo.  *Island Creek Coal Co. v. Young*, 947 F.3d 399, 403 (6th Cir. 2020).  We do, however, grant deference to the Board's interpretations of both the BLBA and its own regulations.  *Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 315 (6th Cir. 2014); *Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 485 (6th Cir. 2012); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that agency interpretations of their own regulations are "controlling unless 'plainly erroneous or inconsistent with the regulation'" (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989))); *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981) ("[A]bsent some obvious repugnance to the statute, the Board's regulation implementing this legislation should be accepted by the courts, as should the Board's interpretation of its own regulation.").

Findings of fact are reviewed under the deferential "substantial evidence" standard, meaning the ALJ's findings of fact must be upheld if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 754–55 (6th Cir. 2019) (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (per curiam)).  On a petition for review, we conduct the

---

[5]In its opening brief, Bituminous included a section arguing that the ALJ erred in recalculating the length of Rice's coal mine employment.  But Bituminous also expressly said that its petition "does not challenge [Rice's] entitlement to benefits." (Pet'rs' Br. at 2.)  While difficult to square these two statements, Bituminous's reply brief and statements at oral argument disclaimed any challenge to Rice's eligibility, including the length of his coal mine work.  In this Court, Rice filed a brief arguing that Bituminous had forfeited the length-of-employment argument by failing to raise it before the ALJ, and that in any event, the ALJ had correctly decided the issue.  In its reply, Bituminous specifically referenced Rice's arguments and said that "[n]either defense is necessary to the litigation of this claim since KRCC is not challenging Rice's entitlement; the only issue on appeal is who should pay Rice's benefits." (Reply Br. at 17 n.6.) At oral argument, when asked about this issue, Bituminous repeated that it was not challenging Rice's employment length, and said there was no reason for Rice to even have appeared in this appeal. Given this express disclaimer of any challenge to Rice's eligibility for benefits, we consider the issue waived.  *See United States v. Olano*, 507 U.S. 725, 733 (1993) (noting that waiver occurs upon the "intentional relinquishment or abandonment of a known right" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))).

same review as the Board to ensure that it correctly applied this standard to the ALJ's findings below. *See id.* ("[This Court] must ensure that the Board applied the deferential 'substantial evidence' test to the administrative law judge's fact findings.").

**B.  Responsible Operator Designation**

Instead of arguing the merits of KRCC's designation as the responsible operator, Bituminous says that DOL gave up any chance to hold KRCC liable thirty years ago, when the Director chose not to challenge the ALJ's determination that KRMS was Rice's employer.  To change its position now, Bituminous says, would cut against traditional principles of finality, which apply in black lung cases just as they would in other types of litigation.  But even under these traditional principles of finality, Bituminous is wrong to say that DOL is stuck with this previous finding.  This is because the ALJ went on to deny Rice's original claim on the merits, regardless of who the responsible employer was.  Only a finding that is necessary to the outcome of an earlier proceeding will result in issue preclusion, and so DOL was not estopped from claiming that KRCC was Rice's true employer.

In *Arkansas Coals, Inc. v. Lawson*, this Court addressed the role of collateral estoppel in BLBA proceedings.  In that case, the ALJ conducted a hearing and ultimately found that the claimant had failed to establish the existence of pneumoconiosis.  739 F.3d at 314.  In the same decision, the ALJ discussed the question of whether Arkansas Coals was the responsible operator.  *Id.*  The ALJ noted that the Director failed to appear at the hearing and submitted no evidence on this issue.  *Id.* at 314–15.  And so, because Arkansas Coals submitted evidence that another mining company had more recently employed the claimant, the ALJ found that Arkansas Coals was not the responsible operator and that the Black Lung Disability Trust Fund would pay "should this claim be awarded" in the future.  *Id.* at 315.  Later, the claimant filed a subsequent claim, and the Director again named Arkansas Coals as the responsible operator.  *Id.*  Arkansas Coals sought review in this court, arguing—just like Bituminous—that the responsible operator designation "was blocked by principles of finality and collateral estoppel."  *Id.*

As we explained, "[c]ollateral estoppel, otherwise termed issue preclusion, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court

determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Id.* at 320 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)). "The doctrine has been applied to administrative decisions, particularly when an agency acts in a judicial capacity and issues a final determination." *Id.*; *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) ("We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality."); *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 122–23 (1988) (applying res judicata to BLBA claims).

The *Arkansas Coals* court then went on to list the four traditional requirements for collateral estoppel:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

739 F.3d at 320–21 (quoting *Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012)). Because identification of the responsible operator was not "necessary to the outcome of the proceeding" when the claimant was denied benefits on the merits, we held that collateral estoppel did not apply. *Id.* at 321.

This case is effectively identical. Just as in *Arkansas Coals*, the determination that KRMS was the responsible operator was not "necessary to the outcome of the prior proceedings," *id.* (quoting *Ga.-Pac. Consumer Prods.*, 701 F.3d at 1098), which similarly ended in the denial of Rice's claim based on his ineligibility for benefits. Accordingly, the Director is not collaterally estopped from claiming that KRCC was Rice's true employer and so can be held responsible for paying his BLBA benefits.[6]

---

[6]In its reply brief, Bituminous points to *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739 (6th Cir. 1997), but that case proves the rule that Bituminous struggles against today. In *Jonida*, the ALJ ultimately awarded the claimant benefits, but Jonida nevertheless failed to appear or challenge its responsible-operator designation until it later moved for reconsideration. *Id.* at 741. When the ALJ awards benefits, the determination of which responsible

Bituminous attempts to distinguish *Arkansas Coals* by pointing out that in that case, the claimant never filed an appeal of the original denial, whereas here, Rice appealed to the Board but the Director never cross-appealed. This argument conflates collateral estoppel with the law-of-the-case doctrine; collateral estoppel makes no distinction based on whether or not a party appeals. *See Commodities Exp. Co. v. U.S. Customs Serv.*, 957 F.2d 223, 228 (6th Cir. 1992) (giving preclusive effect to an earlier decision even when an appeal was still pending); *cf. FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 286–87 (6th Cir. 2018) (describing the law-of-the-case doctrine).[7]

Bituminous also tries to use DOL regulations to say that a different result is required here. But the regulation it points to says the opposite of what Bituminous claims. Specifically, the regulation provides that "[i]f the claimant demonstrates a change in one of the applicable conditions of entitlement, no findings made in connection with the prior claim, except those based on a party's failure to contest an issue, will be binding on any party in the adjudication of the subsequent claim." 20 C.F.R. § 725.309(c)(5) (citation omitted). If this plain text were not enough, *Arkansas Coals* again expressly forecloses Bituminous's argument: "*no findings*, which would include the designation of a responsible operator, are binding" in proceedings on a subsequent claim. 739 F.3d at 318.

*Arkansas Coals* did nothing more than apply the traditional standards for collateral estoppel and finality, which is exactly what Bituminous asks for now. Because the ALJ's 1989 determination that KRMS was Rice's employer was not necessary to the outcome of that proceeding, DOL was not precluded from finding otherwise today.

---

operator must pay them is obviously "necessary to the outcome of the proceeding"; indeed, *Arkansas Coals* expressly distinguished *Jonida* on this basis. *Ark. Coals*, 739 F.3d at 321 (citing *Jonida*, 124 F.3d at 744).

[7]Bituminous has not raised a law-of-the-case argument on appeal, nor does it point to anywhere it did during the administrative proceedings in this case. Even if it had, the doctrine only applies to subsequent stages of the same proceeding. *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016); *FCA*, 887 F.3d at 286–87. It thus seems doubtful that the doctrine would apply in this case, which involves a subsequent claim for benefits over ten years after the conclusion of Rice's original BLBA proceedings.

**C. Rescission of Insurance Policy**

In addition to its estoppel argument, Bituminous also argues that it should be allowed to rescind its insurance agreement with KRCC and thereby avoid liability on Rice's BLBA claim. Under Kentucky law, cancellation of an insurance policy prevents coverage only for events that occur after the cancelation. *Progressive N. Ins. Co. v. Corder*, 15 S.W.3d 381, 383 (Ky. 2000). But in certain cases—such as when the contract was obtained through fraud—a party can instead rescind the agreement and render it void from its inception. *Id.* According to Bituminous, the employee-leasing scheme between KRMS and KRCC was a fraudulent effort to avoid paying the appropriate premiums, and thus Bituminous was tricked into an insurance policy it otherwise would never have issued. Because of this, Bituminous says, it should be allowed to rescind the policy and treat it as though the agreement had never been made.

For several reasons, this argument fails. Both DOL regulations and Kentucky law prohibit the use of rescission to retroactively avoid liability under a BLBA or workers' compensation policy, and even if this were not the case, Bituminous slept on its rights for decades and so cannot seek rescission now. The Benefits Review Board was correct to reject Bituminous's claim for rescission.

First, DOL regulations preclude rescission of an insurance policy providing BLBA coverage; only prospective cancellation is permitted. In order to issue insurance that satisfies the BLBA's mandatory coverage requirement, insurers agree to be bound "to full liability for the obligations under the Act of the operator." 20 C.F.R. § 726.210; *see also* 30 U.S.C. § 933(b)(3) (empowering the Secretary of Labor to regulate the contents of BLBA insurance policies). DOL regulations also provide that the BLBA endorsement added to such workers' compensation policies must "be construed to bring any policy or contract of insurance [for BLBA liability] into conformity with the legal requirements placed upon such operator by [DOL regulations and the BLBA]." 20 C.F.R. § 726.203(c)(6). And one of these legal requirements is that insurers must give DOL thirty days' advance notice before canceling a policy, which in turn relieves the insurer from paying claims that arise after that cancellation. 33 U.S.C. § 936; 20 C.F.R. § 726.212.

Under DOL's interpretation of these regulations, insurers agree to cover the full amount of any BLBA liability assessed to the insured operator, regardless of whether the operator reported the correct number of employees to the insurer. *See Ark. Coals*, 739 F.3d at 313 (noting that DOL's regulations were intended "to ensure that coal mine operators are liable 'to the maximum extent feasible' for awarded claims" (quoting *Dir., Off. of Workers' Comp. Programs v. Oglebay Norton Co.*, 877 F.2d 1300, 1304 (6th Cir. 1989))). And so, while with proper notice, Bituminous could have canceled its policy on a forward-looking basis (thus requiring KRCC to find other insurance in order to comply with the law), it cannot retroactively rescind the policy and leave the Trust Fund to pay the bill.

At least one other circuit has largely agreed with DOL's interpretation. In *Lovilia Coal Co. v. Williams*, 143 F.3d 317, 319–22 (7th Cir. 1998), Bituminous argued that it should not have to pay a BLBA claim brought by the owner of the mine who opted out of workers' compensation coverage and thus was excluded from Bituminous's premium calculation. Looking to the text of the BLBA and DOL's regulations, the court noted that "[t]he BLBA and its regulations require that every coal operator's contract of insurance contain provisions agreeing to cover fully *all* of the coal operator's liabilities under the BLBA," regardless of whether premiums were collected for a given employee. *Id.* at 322. Finding that it was Bituminous's responsibility to ensure that the premiums charged reflected the operator's full risk under the BLBA, the Seventh Circuit upheld the Board's award of benefits. *Id.* at 324.

Setting aside *Lovilia*, even if Bituminous's reading were the better one, this Court will "defer to an agency's interpretation of its own regulation . . . unless that interpretation is plainly erroneous or inconsistent with the regulation." *Ark. Coals*, 739 F.3d at 315 (quoting *Cumberland River*, 690 F.3d at 485); *accord, e.g.*, *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011). Because DOL's reading follows the text of its regulations and fits within the BLBA's statutory scheme, Bituminous is barred from rescinding its policy and thereby avoiding liability for Rice's benefits.

Second, even if DOL's regulations did not themselves preclude rescission, this Court has already held that Kentucky law would instead. *See United States v. Simpson*, 538 F.3d 459, 466 (6th Cir. 2008) ("Under our reading of Kentucky insurance law, however, it appears that the

insurance companies would have to pay on claims submitted by employees of Simpson who were injured on the job even if Simpson had fraudulently misrepresented the number of employees covered."). This is because Bituminous's insurance contract is a workers' compensation policy, intended to benefit third-party employees like Rice under Kentucky's statutory scheme. Allowing Bituminous to rescind the policy and avoid liability for past events would instead force the Black Lung Disability Trust Fund to pay the claim, pushing this cost onto taxpayers and eliminating the main incentive for Bituminous to police its own customers.

While Kentucky's courts do not seem to have yet addressed rescission of workers' compensation agreements, they have prohibited rescission in automotive insurance cases based on these same public-policy concerns. In *Progressive Northern Insurance Co. v. Corder*, Kentucky's high court considered whether an insurer can rescind a motorcycle insurance policy and thereby avoid liability to a third-party claimant. The motorcycle at issue was owned and insured in the name of the driver's father. 15 S.W.3d at 382. Progressive claimed this was a fraud because the policy-holder's son was the primary operator of the motorcycle; in fact, the father did not even have a motorcycle license. *Id.* When an unrelated passenger sued to recover for her injuries in the accident, Progressive filed a declaratory judgment action to rescind the policy, and we requested certification from the Kentucky Supreme Court. *Id.* at 382–83. The state supreme court rejected Progressive's claim, holding that Kentucky Revised Statutes section 304.14-110—the same section that Bituminous relies on to rescind KRCC's policy here—cannot be used "to defeat recovery to an innocent, injured third party." *Id.* at 383.

The *Corder* court rooted its decision in the public policy behind Kentucky's mandatory insurance regime, saying that to permit rescission after a claim "would strike at the heart of compulsory liability insurance and would operate as the functional equivalent of a contractual exclusion from minimum liability coverage." *Id.* at 383–84.

> The result urged by Progressive would likewise defeat minimum coverage, with the consequence that an innocent, injured third party would bear the burden of intentional misrepresentations by the insured. It would shift the loss to one who was entitled to rely on obedience to the law and one who was without any means of determining whether a policy had been fraudulently procured. As between the injured third party and the insurer, the latter is in the far superior position to protect itself. The insurer may accept or reject policy applicants and it possesses

> the skill and wherewithal to make sound underwriting decisions. Therefore, Progressive may not rescind the contract to avoid liability to Corder.

*Id.* at 384 (footnote omitted); *see also Nat'l Ins. Ass'n v. Peach*, 926 S.W.2d 859, 861–62 (Ky. Ct. App. 1996) (further discussing this public policy issue). The same concerns apply to workers' compensation policies like the one issued by Bituminous. *See Simpson*, 538 F.3d at 466–69 (concluding that Kentucky courts would likely bar rescission of workers' compensation policies based in part on Kentucky automotive cases); *see also, e.g.*, *Cruz v. New Millennium Constr. & Restoration Corp.*, 793 N.Y.S.2d 548, 550–51 (App. Div. 2005) (same for New York); *State Ins. Fund v. Brooks*, 755 P.2d 653, 657 (Okla. 1988) (same for Oklahoma); *cf. In re Cummings*, 754 N.E.2d 715, 719 (Mass. App. Ct. 2001) (barring rescission based on a cancellation-notice requirement similar to DOL's).

Bituminous argues that these public policy concerns do not apply because the Black Lung Disability Trust Fund will cover the cost of Rice's benefits, meaning no innocent third party will be left holding the bag. But Kentucky also has a state fund to cover lapses in workers' compensation coverage, and yet this Court still held that rescission was unavailable, expressly rejecting an identical argument to Bituminous's. *Simpson*, 538 F.3d at 466–67. Thus, even if Kentucky common law alone determined the availability of rescission in this case, Bituminous would still be out of luck.

Finally, even if rescission somehow were an option, Bituminous lost any claim to that remedy when it slept on its rights for decades and failed to take any action against KRCC. Under Kentucky law, a party seeking to rescind its contract must promptly act after discovering the fraud or else loses its right to that remedy. *See, e.g.*, *Cent. Life Ins. Co. v. Taylor*, 176 S.W. 373, 374 (Ky. 1915). Bituminous argues that it met this requirement by requesting rescission in Rice's 2002 BLBA proceedings, since only during KRCC's bankruptcy did it discover facts showing the whole of the companies' alleged fraud.

The record shows that the opposite is true. Bituminous was already aware of the core facts for its rescission claim during Rice's 1983 claim for benefits. In that proceeding, the record established that Rice was employed on paper by KRMS but worked in KRCC's mine. If such an

arrangement constitutes fraud (as Bituminous claims here), then Bituminous had the facts necessary to rescind the insurance policy decades before its first effort to do so.

Indeed, the record contains a September 1985 internal memorandum from a Bituminous employee that raises precisely this issue. The memorandum noted that the employee-leasing arrangement between KRMS and KRCC "seemed to be a sham by these two involved companies to avoid paying the proper premium." (App. at 209.) Not only did Bituminous have enough information to draw the inference that KRCC's conduct constituted fraud, it in fact did draw that inference. The only difference is that in 1989, DOL found that KRMS was the responsible operator and left Bituminous off the hook, but today, that liability falls to KRCC and Bituminous, prompting the latter's belated claim for rescission.[8]

Bituminous betrays its timeliness arguments in its own brief, noting that "it was not until DOL awarded benefits in Rice's claim that Bituminous had any financial incentive to request rescission." (Pet'rs' Br. at 30.) The requirement that an insurer promptly act to rescind a fraudulent contract—regardless of its immediate financial incentives to do so—is precisely intended to prevent such gamesmanship: an insurer cannot continue to accept premiums on a fraudulently obtained policy in the hopes that no claim will be made, and then void that policy as soon as a claim is filed and its previous choice becomes unprofitable. Because Bituminous waited decades to initiate any claim of rescission, it has forfeited any right to that remedy and must cover the cost of Rice's benefits.

### D. Due Process Claim

Unable to lean on issue preclusion or rescission, Bituminous last argues that the administrative proceedings before DOL violated its right to due process, and so it should be excused from paying Rice's benefits. Specifically, Bituminous says that after the DOL claims

---

[8]Furthermore, although only dissolved in 2007, KRCC first filed for bankruptcy in 1990. While Bituminous claims "[i]t was not until KRCC filed for bankruptcy that the extent of the fraudulent scheme became clear," even accepting this as true, that means Bituminous might have known "the extent of the fraudulent scheme" for over a decade before Rice's 2002 BLBA claim. (Pet'rs' Br. at 30.) Bituminous points to nothing in the record showing when within that nearly twenty-year period it learned of the facts necessary to demonstrate KRCC's alleged fraud. Bituminous thus cannot show its entitlement to rescission under Kentucky law, and certainly cannot demonstrate the Board's error in rejecting its argument on this basis below.

examiner spoke with Rice's counsel by phone—an ex parte communication that Bituminous says violates the Administrative Procedure Act—DOL failed to include notes of those phone calls in the record.  Because this failure led to an unnecessary remand by the Benefits Review Board, and thus delayed the resolution of Rice's BLBA claim, Bituminous says it was prejudiced to such a degree that the proceedings failed to provide the due process required by the Constitution.

The Due Process Clause of the Fifth Amendment applies to administrative proceedings just as it does to other instances of government action.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Under the procedural element of that clause, a party must be afforded adequate notice and a fair opportunity to be heard before being deprived of its property, in this case the benefits money owed to Rice.  *Arch of Ky., Inc. v. Dir., Off. of Workers' Comp. Programs*, 556 F.3d 472, 478 (6th Cir. 2009); *see also* 5 U.S.C. § 554 (establishing procedures for notice and hearings).  Under this standard, delays or irregularities can rise to such a level as to undermine the fairness of a proceeding, which in turn would amount to a due process violation.  *See, e.g.*, *Island Creek Coal Co. v. Holdman*, 202 F.3d 873, 883–84 (6th Cir. 2000) (finding a due process violation based on the agency's loss of evidence).  But even after such a procedural failure, a party must show that it was prejudiced in order to succeed on a due process claim.  *See, e.g.*, *id.* (analyzing prejudice with respect to the operator's due process claim); *Peabody Coal Co. v. Holskey*, 888 F.2d 440, 443 (6th Cir. 1989) (rejecting a delay-based due process claim for failure to show prejudice).

Bituminous's prejudice argument appears to be this: Because the DOL claims examiner failed to include notes of the phone calls with Rice's counsel in the record, the Benefits Review Board mistakenly determined that Rice's 2006 filing was a request for modification rather than a subsequent claim, and so it erroneously remanded the case to the ALJ.  And if the Board had not remanded the case, Bituminous theorizes that the Board might instead have affirmed the ALJ's decision.  Rather than that, after the remand, Rice got another "bite of the apple" and was able to prove his entitlement to benefits, meaning the proceedings that led to this remand unconstitutionally prejudiced Bituminous.  (Pet'rs' Br. at 32.)  Bituminous adds that, at the very least, an affirmance by the Board would have forced Rice to file a subsequent claim instead of

continuing to litigate his 2006 claim, which in turn would have resulted in a later onset date for benefits.

But this leaves out a key part of the timeline. The ALJ decision that ultimately awarded benefits did not come during proceedings on Rice's 2006 filing alone (i.e., the one that the Board remanded). Rather, in 2013, Rice filed a request for modification, which was the filing that ultimately yielded the order granting him benefits. Nothing with respect to the proceedings on the 2006 filing before the Board and after the subsequent remand impacted Rice's ability to file his request for modification, and it was that action—not the remand—that gave Rice his additional bite at the apple. Even had the Board affirmed the ALJ's decision (itself a rather speculative proposition, given that the Board later affirmed an order finding that the original ALJ's decision was legally erroneous), Rice would still have been able to file his request for modification, thus defeating Bituminous's onset-date argument as well. Accordingly, Bituminous cannot show how DOL's failure to include the call notes in the record resulted in any prejudice.

Bituminous also argues that the delay in proceedings caused by the failure to include the claims examiner's call notes compromised its defense by preventing Bituminous from gathering contrary evidence as to Rice's work history. But Bituminous knew that Rice's years of coal mine employment were at issue at least as far back as 2006, when Rice submitted his third claim for benefits. (*See* App. at 48 (noting that Rice's 2006 application for benefits claimed "ten years of coal mine employment," and that during the later modification proceedings, Bituminous "[did] not dispute this in argument at hearing or in the brief").)

Tellingly, Bituminous points to no argument or piece of evidence that was available to it during the 2006 proceedings but that was lost before the 2013 proceedings—a task that would be a challenge given that the record from the 2006 filing was equally a part of the 2013 modification proceedings. (*See id.* at 27 (describing the procedures for modification, including a review of the "entire record" of the claim that the party is seeking to modify, which includes all "previously submitted evidence").) And while Bituminous does not need to show precisely what the missing evidence would have proven or that it necessarily would have changed the outcome of this case, it still needs to show—at minimum—that some evidence actually became

unavailable. *See Holdman*, 202 F.3d at 883–84 (finding prejudice based on lost exhibits that concerned the issues in dispute); *see also Consolidation Coal Co. v. Borda*, 171 F.3d 175, 178–79, 182–84 (4th Cir. 1999) (finding prejudice based on a substantial delay that resulted in a loss of a defense); *Lane Hollow Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 137 F.3d 799, 802, 807 (4th Cir. 1998) (finding prejudice from delay when the claimant died during the pendency of his claim, preventing the operator from developing contrary evidence). Whatever need Bituminous had to marshal evidence in support of its defense, it was aware of that need back in 2006, well before the claims examiner's ex parte phone calls came to light. None of the subsequent proceedings on Rice's claim for benefits changed this calculus, and so Bituminous has failed to show that it suffered any prejudice as a result of DOL's omission.

## CONCLUSION

For the reasons stated above, we deny Bituminous's petition for review.